PETER D. KEISLER
Assistant Attorney General
KAREN P. HEWITT
United States Attorney
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
R. SCOTT BLAZE
Senior Admiralty Counsel
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Building
P.O. Box 36028
450 Golden Gate Avenue
San Francisco, California  94102-3463
Telephone: (415) 436-6635
Telefax: (415) 436-6632
E-mail: scott.blaze@usdoj.gov

Attorneys for Defendant
United States of America

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSWALDO ENRIQUE TOBAR, *et al.*, | ) Civil No. 07-CV-00817-WQH-WMC |
| | ) |
| | ) IN ADMIRALTY |
| | ) |
| Plaintiffs, | ) UNITED STATES' MEMORANDUM OF |
| | ) POINTS AND AUTHORITIES IN |
| | ) SUPPORT OF ITS MOTION TO DISMISS |
| v. | ) PURSUANT TO FED. R. CIV. P. 12(b)(1) |
| | ) |
| UNITED STATES, | ) The Honorable William Q. Hayes |
| | ) Courtroom 4 |
| | ) Date:   October 9, 2007 |
| | ) Time:  11:00 a.m. |
| Defendant. | ) |
| | ) **NO ORAL ARGUMENT UNLESS** |
| | ) **REQUESTED BY THE COURT** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION AND FACTUAL SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.   The Action Against the United States and Named Defendants Must be
     Dismissed for Lack of Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . 5

     A.   No Action can be Brought in any Court against the United States
          Absent an Applicable Waiver of Sovereign Immunity . . . . . . . . . . . . . . 5

     B.   No Waiver of Sovereign Immunity is Provided by the FTCA -
          Subject Matter Jurisdiction is Lacking . . . . . . . . . . . . . . . . . . . . . . . . . 5

          1.   Foreign Country Exception - 28 U.S.C. § 2680(k) . . . . . . . . . . . 5

          2.   Law Enforcement Exception - 28 U.S.C. § 2680(c) . . . . . . . . . . 7

          3.   Discretionary Function Exception - 28 U.S.C. § 2680(a) . . . . . . 8

     C.   Plaintiffs' Claims Sound in Admiralty - The SAA or PVA Provided
          The Only Limited Waivers of Sovereign Immunity by the United
          States in Admiralty Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          1.   Admiralty Jurisdiction is Exclusive with Respect to Each
               Cause of Action Asserted by Plaintiff . . . . . . . . . . . . . . . . . . . . . 8

               a.   Seizure and Conversion . . . . . . . . . . . . . . . . . . . . . . . . . 8

               b.   Damage Done to Vessel; Personal Injury . . . . . . . . . . . . 9

     D.   This Court Lacks Subject Matter Jurisdiction Over This Action
          Based on the "Discretionary Function" Exception to the Waiver
          Of Sovereign Immunity in the SAA and PVA . . . . . . . . . . . . . . . . . . . 10

          1.   What Are Plaintiffs' Allegations? . . . . . . . . . . . . . . . . . . . . . . . 13

          2.   The Discretionary Function Exception Applies; Sovereign
               Immunity is Retained . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     E.   The Court Lacks Subject Matter Jurisdiction Over the Action
          Based on the "Law Enforcement" Exception to the Waiver of
          Sovereign Immunity in the SAA and PVA . . . . . . . . . . . . . . . . . . . . . 19

i

F.    To the Extent the PVA Provides the Waiver of Sovereign
Immunity, the Action must be Dismissed Pursuant to
46 U.S.C. § 785 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

G.    Plaintiffs Have No Claims Under the United States Constitution . . . . . 23

H.    International Law Provides Plaintiffs No Relief . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES

B & F Trawlers, Inc. v. United States,
  841 F.2d 626 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

Berkovitz v. United States,
  486 U.S. 531 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19

Canadian Transp. Corp. V. United States,
  663 F.2d 1081 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Cheney v. U.S.,
  972 F.2d 247 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Childers v. United States,
  40 F.3d 973 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conrad v. U.S.,
  447 F.3d 760 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dalehite  v. United States,
  346 U.S. 15 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Drake Towing v. Meisner Marine Constr. Co.,
  765 F.2d 1060 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Earles v. United States,
  935 F.2d 1028 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

FDIC v. Meyer,
  510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Forsyth v. Eli Lilly and Co.,
  904 F.Supp. 1153 (D. HI. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Franconia Assoc. v. U.S.,
  536 U.S. 129, 122 S. Ct. 1993 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Green v. United States,
  530 F.Supp. 17, 1981 A.M.C. 2754 (N.D. Cal. 1981) . . . . . . . . . . . . . . . . . . . . . 24

Green v. United States,
  658 F. Supp. 749 (S.D. Fla. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Harrington v. United States,
  748 F. Supp. 919 (D.P.R. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hughes v. United States,
  110 F.3d 765 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iii

<u>Hunt v. Cargo Petroleum Prod. Laden of S.T. Hilda,</u>
378 F.Supp. 701 (E.D. PA. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Indian Towing Co. v. United States,</u>
350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Irving v. United States,</u>
162 F.3d 154 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>Jones v. One Fifty Foot Gulfstar, Etc.,</u>
625 F.2d 44 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Kawa Leasing, Ltd. v. Yacht Sequoia,</u>
544 F.Supp. 1050 (D. MD. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Kelly v. United States,</u>
241 F.3d 755 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Koohi v. United States,</u>
976 F.2d 1328 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Kosak v. United States,</u>
465 U.S. 848 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

<u>Lane v. Pena,</u>
518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Lehman v. Nakshian,</u>
453 U.S. 156 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Liang-Tuan Wei v. Immigration and Naturalization, et al.,</u>
SA CV 05-217-VBF(ANx)(C.D. CA , March 26, 2007) . . . . . . . . . . . . . . . . . . . . . . 15

<u>Library of Congress v. Shaw,</u>
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Marine Coatings of Alabama v. U.S.,</u>
932 F.2d 1370 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>McKenzie v. Kindred Hospitals East, L.L.C.,</u>
276 F.Supp. 2d 1211 (M.D. Fla. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>McMahon v. United States,</u>
342 U.S. 25 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Mid-South Holding Co., Inc. v. United States,</u>
225 F.3d 1201 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

<u>Miller v. United States,</u>
163 F.3d 591 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Nurse v. United States,
  226 F.3d 996 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Peterson and Miller v. United States,
  1986 WL 15639 (S.D. Ga. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Roberts v. United States,
  498 F.2d 520 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rodriguez v. United States,
  1985 WL 9588 (S.D. Fla.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sabow v. United States,
  93 F.3d 1445 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Safe Air For Everyone v. Doyle,
  373 F.3d 1035 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Sharpley v. United States,
  581 F. Supp. 847, 852 (S.D. Ga. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sigmon Fuel Co. v. Tennessee Valley Authority,
  754 F.2d 162 (6th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Silver v. Sloop Silver Cloud,
  259 F.Supp. 187 (S.D. N.Y. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Smith v. United States,
  507 U.S. 197, 122 L.Ed. 2d 548, 113 S.Ct 1178 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 6

Snell v. Cleveland, Inc.,
  316 F.3d 822 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Sosa v. Alverez-Machian,
  542 U.S. 692 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 24

The Tilton,
  23 F.Cas. p. 1277 (No. 14054 C.C. Mass. 1830) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.,
  594 F.2d 730 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

United States v. Curtiss-Wright Export Corp.,
  299 U.S. 304 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Gaubert,
  499 U.S. 315 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

United States v. Mitchell,
  445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

v

United States v. One 1972 Wood 19 Foot Custom Boat,
  501 F.2d 1327 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Powers,
  996 F.2d 1121 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Royal Caribbean Cruises, Ltd.,
  11 F.Supp.2d 1358 (S.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),
  467 U.S. 797 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18, 19

United States v. Testan,
  424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Thompson,
  928 F.2d 1060 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. United Continental Tuna,
  98 S.Ct. 1319, 425 U.S. 164, 47 L.Ed. 2d 653 (1976), on remand
  560 F.2d 569 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Verdugo-Urquidez,
  494 U.S. 259 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Ward v. Peck,
  59 U.S. 267 (1856) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wehr v. Pheley,
  2000 WL 236438 (N.D. CA. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

White v Lee,
  227 F.3d 1214, 1242 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

William Schacter & Assoc. v. United States,
  1985 WL 8804 (S.D. Fla. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Williams v. United States,
  711 F.2d 893 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Williams v. United States,
  747 F.2d 700 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES**

14 U.S.C. § 89 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

14 U.S.C. § 141(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rules of Civil Procedure 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Federal Tort Claims Act (FTCA),

28 U.S.C. § 1346(b)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10
28 U.S.C. § 2680(c)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19, 20, 22
28 U.S.C. § 2680(h)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
28 U.S.C. § 2680(k)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Public Vessels Act (PVA),
  46 U.S.C. §§ 781 *et seq.*   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 23
  46 U.S.C. at §785   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 23
  46 U.S.C. §§31101 - 31113   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Suits in Admiralty Act (SAA),
  46 U.S.C. §§ 741 *et seq.*   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4
  46 U.S.C. 30901 - 30918   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**MISCELLANEOUS**

1 Benedict, <u>Admiralty</u>, §201 at 13-2 (7th Ed. (Rev.)) (2004)   . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>B & F Trawlers, Inc. v. United States</u>,
  14 Tul. Mar. L. J. 175 (1989)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Grant Gilmore and Charles Black, <u>The Law of Admiralty</u>, (2d Ed. 1975)   . . . . . . . . . . . . . . . 9

House Report 109-170, H.R. Rep. 170, 109th Cong., 1st Sess. 2005,
  2006, U.S.C.C.A.N. 972, 2005 WL 1688342 (Leg. Hist.)   . . . . . . . . . . . . . . . . . . . . . . . . 2

Shoenbaum, <u>Admiralty and Maritime Law</u>, 3d ed., §3-10 at 127   . . . . . . . . . . . . . . . . . . . . . . 9

The United States files this memorandum in support of its motion to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1), on the grounds that the Court lacks subject matter jurisdiction over plaintiffs' complaint and action.

## PRELIMINARY STATEMENT

This is a motion to dismiss for lack of subject matter jurisdiction, not a motion for summary judgment. The issue of subject matter jurisdiction may be raised at any time, even on appeal, by, *inter alia*, motion or *sua sponte* by the Court. See Fed. R. Civ. P. 12(h)(3); Snell v. Cleveland, Inc., 316 F.3d 822, 826 - 27 (9th Cir. 2002); McKenzie v. Kindred Hospitals East, L.L.C., 276 F.Supp. 2d 1211, 1218 (M.D. Fla. 2003). Plaintiff bears the burden of establishing that subject matter jurisdiction exists. See Forsyth v. Eli Lilly and Co., 904 F.Supp. 1153, 1156 (D. HI. 1995). When a court's jurisdiction is attacked, the court may go outside the pleadings and consider extrinsic evidence relating to jurisdiction without converting the motion to dismiss into a motion for summary judgment. *E.g.,* Safe Air For Everyone v. Doyle, 373 F.3d 1035, 1039 (9th Cir. 2004); White v Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). When ruling on the jurisdictional dispute, the court need not accept the truthfulness of plaintiffs' allegations as to jurisdictional facts. *Id.* "(N)o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *E.g.,* Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

Sovereign immunity is this matter is retained on numerous bases. The existence of sovereign immunity precludes federal subject matter jurisdiction.

## INTRODUCTION AND FACTUAL SUMMARY

This action arose from the boarding and alleged search and seizure of F/V JOSTYN, on or about October 5, 2005. Plaintiffs allege JOSTYN, and the catch on board, were owned by plaintiffs Tobar and Lucas. See complaint, attached as exhibit 1 to declaration of counsel, at

para. III.[1]/

The complaint, at para. I, alleges subject matter jurisdiction is pursuant to the Federal Tort Claims Act (FTCA), "28 U.S.C., Section 1346(b) and 2661, et seq., and particularly 28 U.S.C. Section 2680(h) . . . ." as well as the Suits in Admiralty Act (SAA), 46 U.S.C. §§ 741 *et seq.*, and the Public Vessels Act (PVA), 46 U.S.C. §§ 781 *et seq.*[2]/  Plaintiffs begin paragraph I by asserting "This action arises **in part**" under the identified statutes (emphasis supplied), but never identifies what other basis or bases, if any, may exist for subject matter jurisdiction or any waiver of sovereign immunity.  Further allegations of the complaint include that JOSTYN was in international waters off the Galapagos Islands at the time of the incident, and that all plaintiffs are foreign nationals, residents of Ecuador. Complaint, para III.  Finally, the administrative claim asserts that JOSTYN was flagged under Ecuador.  Exhibit 3 to declaration of counsel.

Pertinent facts are supported by attached declarations of LCDR Lawrence K. Ellis ("Ellis declaration"), LCDR Brad Kieserman (with attachments)("Kieserman declaration") and R. Scott Blaze (with attachments)("declaration of counsel").

The United States Coast Guard (USCG) Law Enforcement Detachment (LEDET) boarded JOSTYN on October 5, 2005, in international waters off the coast of Ecuador.[3]/  See Ellis and

---

[1]/    Curiously, plaintiffs do not name the vessel alleged to have been boarded and seized. However, there is no dispute that the vessel was named F/V JOSTYN, and eas allegedly owned by two named plaintiffs (Tobar and Lucas) as discussed above

[2]/    In this memorandum and underlying motion, we have cited to the statutory provisions as codified at the time of the incident.  As a courtesy to plaintiff, we are happy to provide parallel statutory citations to the recently re-codified sections of the SAA and PVA that are relevant to this case and to the motion.  The SAA is now codified at 46 U.S.C. §§30901 - 30918; the PVA at §§31101 - 31113. The "reciprocity" provision of the PVA, formerly 46 U.S.C. at §785 is now at sec. 31111.  No substantive changes occurred.  House Report No. 109-170, (to accompany H.R. 1442) dated July 14, 2005, makes clear the re-codification is just that.  The report at p.2 states "It codifies existing law rather than creating new law."  (H.R. REP. 109-170, H.R. Rep. 170, 109th Cong., 1st Sess. 2005, 2006, U.S.C.C.A.N. 972, 2005 WL 1688342 (Leg. Hist.)).

[3]/    USS McCLOSKEY provided the platform for the drug interdiction mission being conducted by the USCG LEDET.  During all pertinent times involved in  the allegations of the complaint, all

1  Kieserman declarations; plaintiffs' complaint, para. III. The boarding and search were conducted

2  after consent of the Ecuadoran government authorities was sought and received.  See Ellis and

3  Kieserman declarations.

4      The boarding was based on a decision by the USCG that JOSTYN may be involved in

5  transport of illegal drugs.  An initial search of the vessel was conducted after the boarding.

6  Based on the results of the initial search, and because certain spaces could not be accessed at sea,

7  it was determined by the Government of Ecuador (GOE) that a further search should be

8  conducted in port.  At the direction of GOE, JOSTYN was escorted, along with another fishing

9  vessel, to the Ecuadoran 12 mile territorial waters limit, where custody of the vessel, its cargo

10  and crew was transferred to the GOE, at the latter's direction.  Id..

11      On January 16, 2007, plaintiffs filed their complaint in federal court in the Southern

12  District of Texas, at Galveston. The court in Galveston granted the United States' motion to

13  transfer for improper venue to the Southern District of California. Magistrate Judge McCurine, at

14  an ENE conference held June 14, 2007 ordered that the United States must file its motion to

15  dismiss pursuant to Fed. R. Civ. P. 12 by August 31, 2007.  At that conference, and confirmed at

16  a later status conference, Judge McCurine ruled all discovery remained stayed pending the

17  determination of the instant motion.  As this motion is filed pursuant to Fed. R. Civ. P.12(b)(1),

18  discovery remains immaterial to the issues raised and to the  jurisdictional arguments presented.

19  **SUMMARY OF ARGUMENT**

20      No waiver of sovereign immunity exists.  Subject matter jurisdiction is absent.  Plaintiffs

21  have the burden of establishing subject matter jurisdiction.  They have not done so.

22      Plaintiffs allege subject matter jurisdiction pursuant to the FTCA, the SAA and the PVA.

23  This on its face is impossible since the FTCA explicitly excludes admiralty actions for which a

24  limited waiver of immunity is contained in the SAA or PVA.  As will be shown, plaintiffs

25  ───────────────────

26  navy personnel and equipment were under the command of the USCG, not the US Navy.  See Ellis

27  and Kieserman declarations.

claims, if any exist, would sound in admiralty, and therefore would be within the admiralty jurisdiction of the courts.  Accordingly any limited waiver of sovereign immunity would be solely pursuant to the SAA or PVA.  Even if the claims were otherwise cognizable within the FTCA, *i.e.*, not sounding in admiralty, explicit FTCA exceptions would retain sovereign immunity.

The sole limited waiver of sovereign immunity for admiralty actions against the United States is the Suits in Admiralty Act (SAA), 46 U.S.C. §§ 741 *et seq.*, or the Public Vessels Act (PVA), 46 U.S.C. §§ 781 *et seq.*  Plaintiffs have failed to comply with jurisdictional conditions on the waiver of immunity.  Additionally, exceptions to any waiver contained in these statutes results in retention of sovereign immunity.

The FTCA excepts from its limited waiver all claims cognizable in admiralty.  Since plaintiff's claims sound in admiralty, the FTCA does not provide subject matter jurisdiction. Even were plaintiffs' claims otherwise cognizable under the FTCA,  such would not provide the waiver, based on explicit exceptions to the limited waiver contained therein, *i.e.*, the law enforcement exception, the discretionary function exception and the foreign country exception.

Second, as plaintiff's claims sound solely in admiralty, subject matter jurisdiction is still lacking since there has been no waiver of sovereign immunity. The sole limited waiver of sovereign immunity for claims against the United States sounding in admiralty is the SAA or the PVA.  Plaintiff has failed to comply with numerous jurisdictional conditions on the waiver of immunity in the SAA and PVA, including the discretionary function exception and the reciprocity provision of the PVA.  Accordingly, neither the SAA or PVA waive immunity here. The reciprocity provision of the PVA and the discretionary function exception applicable to both the SAA and PVA retain immunity.   Plaintiffs have not satisfied their burden to establish subject matter jurisdiction.   The three bases identified by plaintiff, the FTCA, SAA and PVA do not waive immunity.  Plaintiffs fail to identify any other possible basis for a waiver of sovereign immunity.

# ARGUMENT

I.  The Action Against the United States and Named Defendants Must be Dismissed for Lack of Subject Matter Jurisdiction.

    A.  No Action can be Brought in any Court against the United States absent an Applicable Waiver of Sovereign Immunity.

The United States, as sovereign, is immune from suit, absent an unequivocal waiver by Congress of such immunity.  United States v. Mitchell, 445 U.S. 535 (1980).  Where sovereign immunity has been waived, the conditions of such waiver must be complied with strictly. Dalehite v. United States, 346 U.S. 15, 30, 31 (1953); Sigmon Fuel Co. v. Tennessee Valley Authority, 754 F.2d 162, 165 (6th Cir. 1985).   The United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." Lehman v. Nakshian, 453 U.S. 156, 160 (1981), quoting United States v. Testan, 424 U.S. 392, 399 (1976).  "It is axiomatic that Congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States under admiralty law or otherwise." Roberts v. United States, 498 F.2d 520 (9th Cir. 1974).  Sit against the United States can only be entertained when Congress has specifically waived the United States' immunity.  See id.  Furthermore, such waiver of sovereign immunity cannot be implied; it must be unequivocally expressed.  Franconia Assoc. v. U.S., 536 U.S. 129, 122 S. Ct. 1993, 2001 (2002).

    B.  No Waiver of Sovereign Immunity is Provided by the FTCA - Subject Matter Jurisdiction is Lacking.

Assuming solely for purposes of this portion of the memorandum that this matter is one which would otherwise fall within the purview of the FTCA (were admiralty claims not excluded from the FTCA limited waiver, which they are), such statute does not waive immunity here.

    1.  "Foreign Country Exception - 28 U.S.C. §2680(k).

The FTCA, at  28 U.S.C. §2680(k), contains an exception to the limited waiver of sovereign immunity which may otherwise be provided by the statute. The exception retains sovereign immunity for "[a]ny claim arising in a foreign country."  A claim such as the one at issue, for alleged tortious actions occurring in international waters on the high seas, falls within this exception.

The Supreme Court in, <u>Sosa v. Alverez-Machian</u>, 542 U.S. 692 (2004.) rejected the so-called "headquarters" theory and held that an alleged cause of action arising other than in the United States fell within the exception. The "country" in question in <u>Sosa</u> was Mexico, but the reasoning of the Court made clear the scope of the exception to the limited waiver of sovereign immunity in the FTCA.

Congress can waive immunity for violation of the laws of the United States, laws that Congress enacted. However, since the FTCA provides that the law of the place where the cause of action arose applies, to include any territory or country other than the United States in the waivers was clearly not what Congress intended, and was nonsensical. <u>Sosa</u>, *supra*, 542 U.S. at 727.

The decision in <u>Sosa</u> confirmed the reasoning of the Court in <u>Smith v. United States</u>, 507 U.S. 197, 122 L.Ed. 2d 548, 113 S.Ct 1178 (1992), where the Court found the exception applicable with respect to Antarctica.

> If Antarctica were not a "foreign country," and for that reason included within the FTCA's coverage, §1346(b) would instruct courts to look to the law of a place that has no law in order to determine the liability of the United States - surely a bizarre result.(footnote omitted).

*Id.*, 122 L.Ed. 2d at 554.

Plaintiffs bear the burden of establishing subject matter jurisdiction. The first step to satisfying such burden is to identify what the basis is for such jurisdiction. They identify only the FTCA, SAA and PVA. Saying there may be others, but identifying none, does not satisfy the burden. Plaintiffs allege that the United States was "careless, reckless and negligent" *inter alia* in "boarding and seizing a foreign flagged vessel in international waters." (complaint para. V) However, they fail to identify what treaty, customary international law or other law could provide the waiver of sovereign immunity as a result of the alleged acts. Perhaps plaintiffs are using a scattershot generalization in the hope defendant United States will identify for them a basis for waiver of sovereign immunity which would fit with their allegations of para. V. No such waiver exists, plaintiffs have failed to even attempt to identify some basis for a waiver as to these

allegations, and their burden remains unsatisfied.

2.  "Law Enforcement" Exception - 28 U.S.C. §2680(c).

The FTCA, at 28 U.S.C. §2680, contains explicit exceptions to the limited waiver of sovereign immunity otherwise provided by the FTCA. They include the "law enforcement" exception at §2680(c), which provides, *inter alia*, that no waiver exists for "Any claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." In 2002, Congress amended 28 U.S.C. §2680(c) to provide a waiver in certain circumstances. The amendment, codified at 28 U.S.C. §2680(c)(1)-(4), provides a waiver only where all the requirements of these four subsections are present. With respect to the property at issue, §§ (c)(1) requires that "the property was seized for the purpose of forfeiture . . . ." Unless this provision, and the three other conditions on the waiver of sovereign immunity are all met, there is no waiver.

Here plaintiff does not allege that the property was "seized for the purpose of forfeiture" or that JOSTYN or any property, was forfeited. In fact no property was seized for the purpose of forfeiture by the United States. The vessel was boarded, searched and turned over to Ecuadoran government authorities. To the knowledge of the United States, no forfeiture occurred by or to the Ecuadoran government, which in any event would be immaterial for purposes of this action against the United States.

The Coast Guard was authorized to board and search the vessel pursuant to 14 U.S.C. §89;

§89. Law enforcement. (a) The Coast Guard *may* make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. (Emphasis supplied.)

§89 continues with a description of what the USCG may do with respect to law enforcement, including authority to assist other agencies pursuant to 14 U.S.C. §141(a). The actions complained of are nothing if not related to searches on the high seas by an officer of customs or excise or any other law enforcement officer. The USCG qualifies as law enforcement officers

within the meaning of §2680(c).  See Cosmomar Shipping Co. v. United States, 231 F.Supp. 2d 1353 (S.D. GA. 2002).

   3.   "Discretionary Function" Exception - 28 U.S.C. §2680(a).

Subject matter jurisdiction is also lacking based on the "discretionary function" (hereinafter sometimes "DF.") exception to the FTCA, codified at 28 U.S.C. §2680(a).  The discussion of the DF exception with respect to the SAA and PVA, infra, applies equally to the FTCA.  The Court is referred to that discussion.

   C.   Plaintiffs' Claims Sound in Admiralty - The SAA or PVA Provide the Only Limited Waivers of Sovereign Immunity by the United States in Admiralty Matters.

Plaintiffs assert at paragraph III of the complaint that defendants searched and seized JOSTYN, caused injury and property loss to them, their vessel and her cargo, all while the vessel was at sea.  These allegations set out a cause or causes of action sounding in admiralty, if they set out any cause of action at all.

   1.   Admiralty Jurisdiction is Exclusive with Respect to Each Cause of Action Asserted by Plaintiff.

The causes of action set out above as alleged by plaintiff assert negligence, carelessness or recklessness by defendant in its boarding, searching, etc. JOSTYN at sea.   Plaintiff sets out no other cause of action.[4]/

   a.   Seizure and Conversion.

Actions for asserted wrongful taking or seizure of a vessel on navigable waters, designated as either "possessory" or "petitory" actions (or libels) are within admiralty jurisdiction, as is any action for tortious conversion.

The admiralty also has jurisdiction of possessory and petitory suits .

   . . .

Petitory suits are suits in which it is sought to try the title to a ship independently

---

[4]/    Plaintiffs assert a litany of actions (complaint para. V.) which they allege were done by defendant negligently, recklessly and carelessly, including that dealing with boarding a foreign flag vessel in international waters (discussed above) and perceived violation of constitutional rights, which is discussed within. None of these either waives sovereign immunity or provides plaintiffs with even a cause of action, waiver or not.

MEMORANDUM IN SUPPORT OF U.S. MOTION TO DISMISS      8      Civil No. 07-CV-00817-WQH-WMC

of any possession of the vessel.

. . .

Possessory actions are actions to recover vessels or other property to which a party

is . . . [allegedly] entitled.

1 Benedict, Admiralty, §201 at 13-2 (7th Ed. (Rev.)) (2004)

Petitory actions for determination of title to a vessel are solely within admiralty jurisdiction. See Ward v. Peck, 59 U.S. 267 (1856) (referring to The Tilton, infra, holding that the latter's conclusion that petitory actions are within the admiralty jurisdiction is not questioned); The Tilton, 23 F.Cas. p. 1277 (No. 14054 C.C. Mass. 1830); Wehr v. Pheley, 2000 WL 236438 (N.D. CA. 2000) (noting that whereas a distinction may exist as to exclusivity of federal court admiralty jurisdiction regarding in rem versus in personam petitory actions, all petitory actions are within admiralty jurisdiction); Silver v. Sloop Silver Cloud, 259 F.Supp. 187, 191 (S.D. N.Y. 1966); Kawa Leasing, Ltd. v. Yacht Sequoia, 544 F.Supp. 1050, 1065 (D. MD. 1982); Hunt v. Cargo Petroleum Prod. Laden of S.T. Hilda, 378 F.Supp. 701 703 (E.D. PA. 1974); Jones v. One Fifty Foot Gulfstar, Etc. 625 F.2d 44, 47 (5th Cir. 1980). See also Shoenbaum, Admiralty and Maritime Law, 3d ed., §3-10 at 127, esp. n. 47; 1 Benedict, Admiralty, supra, at §73.

Further, conversion is a maritime tort which gives rise to a maritime lien. See Grant Gilmore and Charles Black, The Law of Admiralty, (2d Ed. 1975), "Among other torts which have been held to give liens are conversion . . . . " Id., §9-20, p. 629 and cases cited at n. 95c.

Plaintiffs complaint is at best imprecise as to what it alleges, whether it be simply an improper boarding and search resulting in injury and property damage, or a seizure and action for return of property. For purposes of subject matter jurisdiction the choice is immaterial. Either way, the action sounds in admiralty if at all.

b.   Damage Done to Vessel; Personal Injury.

Plaintiffs clearly allege damage done to their vessel while in the custody of defendant. In addition they allege, with absolutely no supporting evidence, personal injuries to crew members. This too is squarely within the ambit of admiralty Jurisdiction, at least based on the allegations. See The Law of Admiralty, id. §1-10, p.23, and cases cited at n. 74.

Each alleged cause of action sounds in admiralty. The sole waiver of sovereign immunity

for admiralty matters such as those filed here against the United States, is the SAA or PVA. The FTCA explicitly excludes from its limited waiver of sovereign immunity (and therefore from subject matter jurisdiction) actions cognizable within admiralty under the SAA or PVA. 28 U.S.C. §2680 (b). Williams v. United States, 711 F.2d 893 (9th Cir. 1983).

> D.   This Court Lacks Subject Matter Jurisdiction Over This Action Based On The "Discretionary Function" Exception To The Waiver Of Sovereign Immunity In The SAA and PVA[5]/

We have argued above, and believe it conclusively established, that plaintiffs' complaint asserts claims cognizable, if at all, only within admiralty jurisdiction, and therefore, not within the FTCA. The only applicable waiver of sovereign immunity, if such exists, is contained in the SAA and/or the PVA.

It is axiomatic that such a waiver of sovereign immunity as contained in the any Act (including the FTCA, SAA and PVA) "will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996). See also Library of Congress v. Shaw, 478 U.S. 310, 315 (1986); McMahon v. United States, 342 U.S. 25, 26 (1951). One well recognized, though implicit, exception to the waiver of sovereign immunity contained in the both the SAA and PVA is the "discretionary function" exception. Earles v. United States, 935 F.2d 1028, 1030-32 (9th Cir. 1991); Drake Towing v. Meisner Marine Constr. Co., 765 F.2d 1060, 1064 (11th Cir. 1985); Williams v. United States, 747 F.2d 700, 700-01 (11th Cir. 1984) (per curiam) (affirming Williams by and through Sharpley v. United States, 581 F. Supp. 847, 852 (S.D. Ga. 1983). As set out in the FTCA, 28 U.S.C. at § 2680(a), which provides the waiver for non-admiralty torts, this exception preserves sovereign immunity for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation should be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused.

---

[5]/   The FTCA can not and does not apply because this is an admiralty matter. Even were this action cognizable under the FTCA, the discretionary function exception, as well as the foreign country exception, both explicit in the FTCA, would retain sovereign immunity and withhold subject matter jurisdiction.

Where the discretionary function exception to the limited waiver of sovereign immunity applies, no federal subject matter jurisdiction exists.  United States v. Gaubert, 499 U.S. 315, 322 (1991).

"The basis for the discretionary function exception was Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'"  Berkovitz v. United States, 486 U.S. 531, 536-37 (1988) (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984)).  Therefore, a discretionary act must be "based on considerations of public policy" to be shielded by the discretionary function exception. Id. at 537.  But the government is not required to prove that social, economic or political factors were actually considered in exercising the discretion.  Gaubert, 499 U.S. at 325.  Subjective intent is irrelevant; the government need only show that the actions taken "are susceptible to policy analysis."  Id.  Moreover, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id. at 324.

There is a two-part test for determining whether the DF exception shields the United States from liability in a particular case.  First, this Court must consider the nature of the conduct challenged and determine whether it involves "an element of judgment or choice."  Nurse v. United States, 226 F.3d 996, 1001 (9th Cir. 2000).  See also Conrad v. U.S., 447 F.3d 760, 764 (9th Cir. 2006); United States v. Gaubert, supra, 499 U.S. at 322 (1991) "[T]he 'relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner.'"  Hughes v. United States, 110 F.3d 765, 768 (11th Cir. 1997) (quoting United States v. Powers, 996 F.2d 1121, 1125 (11th Cir. 1993) (emphasis added).

This Circuit has "repeatedly held that a general regulation or policy . . . does not remove discretion unless it specifically prescribes a course of conduct." Kelly v. United States, 241 F.3d

755, 761 (9th Cir. 2001) (emphasis added).  In <u>Miller v. United States</u>, 163 F.3d 591, 597 (9th Cir. 1998), this Circuit held the discretionary function exception barred claims challenging decisions of the Forest Service about how to fight a multiple fire situation.  After noting the "mandatory language regarding requirements for fire suppression . . . ," but also noting it "did not address the multiple fire situation or 'tell firefighters how to fight the fire,'" this Circuit ruled that "'[t]he existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion.'"  <u>Kelly</u>, 241 F.3d at 761 (citing <u>Miller</u>, 163 F.3d at 595).  Likewise, in <u>Sabow v. United States</u>, 93 F.3d 1445, 1453 (9th Cir. 1996), this Circuit held that "[t]he presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations," and earlier in <u>Childers v. United States</u>, 40 F.3d 973, 976 (9th Cir. 1995) (emphasis in original), it held that where the National Park Service ("NPS") kept the park open, but did issue warnings, "decisions as *to the precise manner* in which NPS would warn the public as to trails which are left open, but unmaintained in the winter, clearly fall within the discretionary function exception," despite the safety manual requirement that the NPS warn the public if it decided not to close certain trails.

Second, does the conduct implicate social, economic or political policy considerations, *i.e.*, is the discretion the type of decision-making the exception is designed to protect, guided by the fact that the <u>purpose</u> of the exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." <u>Berkovitz</u>, *supra*, 486 U.S. at 536-37.  "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and whether they are susceptible to policy analysis." <u>Gaubert</u>, 499 U.S. at 325.  Further, "when established government policy, as expressed or implied by statute, regulation or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's  acts are grounded in policy being exercised in that discretion." <u>Gaubert</u>, 499 U.S. at 324.

In this case there can be little question that the manner and method by which the JOSTYN was boarded, searched and turned over to the GOE involved the exercise of discretion by Government law enforcement agents. Federal law vests United States Coast Guard (USCG) with broad discretionary authority to perform the precise tasks of which plaintiffs complain in this matter. 14 U.S.C. §89(a) provides "The Coast Guard **may** make inquiries, examinations, inspections, searches, seizures, and arrests upon the high sear and waters over which the United States has jurisdiction for the prevention, detection, and suppression of violations of law of the United States." (Emphasis supplied.) The section continues that USCG officers may "at any time go on board of any vessel . . . and examine, inspect and search the vessel and use all necessary force to compel compliance."

Secondly, and in anticipation of plaintiffs arguing the universally-rejected operations/policy dichotomy with respect to DF, the USCG Maritime Law Enforcement Manual (MLEM), COMDTINST M16247.1D, and Counter Drug and Alien Migrant Interdiction Operations (CDMAIO), COMDTINST M16247.4 provide internal guidance for conducting Coast Guard maritime law enforcement operations, including those conducted on the high seas. Discretion as to method of carrying out a law enforcement operation is left to on-scene personnel. See Kieserman declaration. No mandatory procedures applicable to the instant case are present in the MLEM or CDMAIO, statutory or regulatory authorities. Accordingly, the first part of the DF test is satisfied.

1.    What Are Plaintiff's Allegations?

It is crucial for purposes of the application of the discretionary function exception to specify what precisely are plaintiffs' allegations as to actions on the part of the United States. Again, plaintiffs seem to opt for the scattershot approach, but such only emphasizes that the activities which plaintiffs allege as actionable, are precisely those actions with which Congress has invested the USCG with broad discretionary authority in 14 U.S.C. §89(a), *i.e.*, that defendants boarded, searched and seized JOSTYN, caused injury and property loss to plaintiffs, their vessel and her cargo, all while the vessel was at sea, and all in a careless, reckless, and

negligent manner.

Plaintiff's complaint does <u>not</u> appear to assert that the bare decision to board, search and (they claim) seize JOSTYN on suspicion of drug trafficking is actionable.  Rather, they seem to assert that the way the actions were carried out is actionable.[6]/

For example plaintiffs allege the actions were performed in a negligent, reckless and careless manner - not the decision to act, but the method of doing so.  Plaintiffs also complain *e.g.*, that they were detained for an inordinate length of time ("99 days" although plaintiffs probably intended to say "9 days")(complaint para. V.); , the method of ascertaining whether plaintiffs were drug smugglers, the method of "arrest", timing of the release of JOSTYN and plaintiffs, *etc. Id.*

Plaintiffs transparently (whether intentionally is unclear) attempt to drive a wedge between the discretionary acts of boarding, searching vessel and crew for evidence of drug transport, and possibly seizing the vessel and any contraband on the one hand, and fictional allegations which they hope the court will see as outside the scope of the intended activities. They fail at this attempt.

The declarations of Kieserman, Ellis and particularly Bertheau make clear that the intended scope of the operation was boarding JOSTYN, searching the vessel and personnel for illegal drugs or evidence of same, and turning the vessel over to Ecuadorian authorities for whatever action was thereafter necessary. The operation was a full law enforcement boarding and search for drugs.  Neither the boarding or search can be said beyond the scope of the discretionary activity which was intended and which was performed.  They are a seamless whole of the same cloth.

Paragraph V of the complaint alleges plaintiffs were arrested and detained, that the USCG determined whether drugs were present, that the timing of the release of the vessel was

---

[6]/   Regardless of plaintiffs intentions or designs in drafting the complaint, even were the bare decision to board and search the action of which plaintiff complained, such would still be protected by the exception.  See <u>Mid-South Holding Co., Inc. v. United States</u>, 225 F.3d 1201, 1205 (11th Cir. 2000).

inconsistent with there being no drugs found, that constitutional rights were violated, that the boarding was a violation of international law, that plaintiff's were assaulted,[7] and that privacy and property rights were violated.

In this Circuit, plaintiffs' factual allegations as to jurisdictional issues need not be accepted. Still, of the allegations plaintiffs insert in their catchall paragraph V, all are part and parcel of boarding, searching and, according to plaintiffs, seizing JOSTYN.

> 2. The Discretionary Function Exception Applies;
> Sovereign Immunity is Retained

The DF exception to the waiver of sovereign immunity in the SAA and PVA has been found to be directly applicable to cases involving the boarding, search, seizure and custody of vessels suspected of involvement in criminal acts. Mid-South Holding Co., Inc. v. United States, 225 F.3d 1201 (11th Cir. 2000); B & F Trawlers, Inc. v. United States, 841 F.2d 626 (5th Cir. 1988). See also, Liang-Tuan Wei v. Immigration and Naturalization, et al., SA CV 05-217-VBF(ANx)(C.D. CA , March 26, 2007) (slip op. attached as attachment no. 3 to declaration of counsel.)

In Mid-South Holding, the Eleventh Circuit examined the issue of whether the United States was immune under the DF exception for the allegedly negligent sinking of a vessel boarded and searched unsuccessfully for drugs by the United States Coast Guard and Customs

---

[7] Although plaintiffs allege in the complaint assault and personal injuries, such appears to be little more than boilerplate wishful thinking. Attachments 4 and 6 to declaration of counsel are administrative claims submitted by plaintiffs' counsel in behalf of two plaintiffs, Francisco Arteago and Oswaldo Tobar, respectively. The former is alleged to be a crew member, the latter an owner of JOSTYN. The other 24 administrative claims for the other 24 plaintiffs are identical to one or the other in what information is provided, or rather, not provided, regarding now-alleged assault or injury. Neither mention assault. Neither identifies or describes any injury. No doctor is identified, no medical records referenced or provided, although all are requested by the claim form. Attachment 5 to declaration of counsel is a letter from plaintiffs' counsel to the Coast Guard Claims office. In describing the claims, plaintiffs' counsel makes no mention of assault or any injury - only lost fish, lost time, false imprisonment and search. Attachment 3 is plaintiffs initial disclosures. No mention exists of assault, nor of description of injuries, nor of identification of medical experts, nor of treating physicians, nor of medical records.

Service. In its analysis the court first held that the specific discretionary function to be examined was the decision by the Customs Service and Coast Guard to board and search the vessel. Not surprisingly, an examination of the statutory authority of both the Customs Service and the Coast Guard found broad grants of authority to board, search, arrest and seize vessels to enforce the United States' laws. Mid-South Holding, 225 F.3d at 1205. Second, as to whether the decision to board and search a vessel was "susceptible to policy analysis," as required by the Supreme Court in Gaubert, the court also answered in the affirmative:

> The Customs Service, faced with escalating enforcement duties and limited resources, must decide how best to effectuate our nation's anti-narcotics laws.  In so doing the Customs Service necessarily exercises discretion in choosing whether to board and search a vessel, weighing the costs of implementing such activities against the likelihood of an enforcement success.[8]/ The discretionary function exception was designed to prevent judicial "second guessing" of exactly this type of policy-based decision.

Mid-South Holding, 225 F.3d at 1206.

In so finding, the Eleventh Circuit relied significantly on the Fifth Circuit's decision in B & F Trawlers, Inc., which reached the same conclusion in an action arising out of the Coast Guard's seizure and towing of an allegedly stolen fishing vessel found with drugs aboard. The Coast Guard boarded and seized the vessel on the high seas and began towing it to Guantanamo Bay, Cuba.  A few days later while still under tow, a fire broke out in the vessel and, the following day, the Coast Guard intentionally sank it. The innocent owner filed suit against the United States for the loss of the vessel.

In upholding sovereign immunity pursuant to the discretionary function exception to the SAA, the Fifth Circuit first found that the "apprehension and custody of drug-running vessels" must be the focus of the discretionary function analysis. B & F Trawlers, 841 F.2d at 631 (emphasis added). Although remanding to ascertain whether the Coast Guard had issued any specific regulations applicable to "boarding, searching, arresting and transporting vessels" the

---

[8]/    The actual success or lack thereof must obviously be subsumed in the discretionary nature of the act.

court observed:

> [W]e seriously doubt that Congress intended to expose the government to tort liability, on the alleged facts of this case, that would not only inhibit Coast Guard enforcement efforts but would also effectively reallocate scarce law enforcement resources from drug interdiction to custodial care for seized vessels, some of which are subject to forfeiture anyway and others of which are operating on their last breath. We thus decline to place the burden of tort liability exposure on the government here and instead hold that the discretionary function exception in principle shields from tort liability the Coast Guard's apprehension and transportation of drug-running vessels.

B & F Trawlers, 841 F.2d at 631 (footnote and citations omitted).

In both Mid-South Holding and B & F Trawlers, claimants argued that even if the decisions to board, search and allegedly seize, and, in the latter case, take into custody the vessel, were discretionary functions, the actual conduct of doing so was not.[9/] Both courts rejected such a distinction, as we discuss in some detail below. The rejection of the position was required under United States v. Gaubert, 499 U.S. 315, where the Supreme Court rejected the lower court's misapplication of Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), which had resulted in the lower court recognizing the policy versus practice dichotomy. See also Mid-South Holding, 225 F.3d at 1207 ("Although the attendant details could be characterized as mundane or as disengaged from any substantial policy consideration, they are nonetheless critical to the performance of the discretionary scheme and, accordingly, are entitled to the protection of the discretionary function exception.")

Addressing the argument by plaintiff in Mid-South Holding, that whereas the decision to board and search may be covered by the discretionary function exception to the waiver of sovereign immunity, the actual conduct of so doing was not, the panel disagreed.

> Of course, the injury Mid-South alleges cannot be attributed directly to the Custom's Service decision to board and search its vessel. Rather, the act that purportedly caused the injury would had to have occurred during the operational execution of that decision.  As the Supreme Court made clear in Gaubert,

---

[9/]    In fact, the manner of boarding and searching vessels, including those suspected of being involved in carriage of controlled substances, is statutorily left to the discretion of the USCG. Further, the USCG internal guidance contained in COMDTINST M16247.1D, discussed infra, is to similar effect.

however, "[d]iscretionary conduct is not confined to the policy or planning lever. '[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case'" 499 U.S. at 321, 111 S.Ct. At 1275 (quoting *United States v. S.A. Empresa de Viacao Aera Rio Grandense (Varig Airlines)* (citation omitted).) Any act, therefore, regardless of the administrative level at which it is authorized or taken, qualifies as "discretionary" provided it satisfies the *Gaubert* analysis. We therefore agree with the United States that on-site decisions of the agents of the Customs Service concerning the manner in which to search the vessel also fall within the scope of the discretionary function exception. *See Varig Airlines*, 467 U.S. at 819-20, 104 S.Ct. At 2767-68. (Observing that discretionary actions in furtherance of a policy decision are within the scope of the exception.) Because no statute or corresponding regulation prescribes the methodology for boarding and searching a vessel (footnote 7 within quote set out below) field agents are left to their discretion to devise the best course for executing these functions.

> (foot note 7 within the quotation, reads)
> "Mid-South suggests the possible existence of such guidelines, and requests that should we find the discretionary function exception applicable in principle, we remand the case to allow Mid-South to conduct sufficient discovery. We decline to do so. Even if, as Mid-South conjectures, pertinent guidelines had required Customs Service agents to exercise due care during their search, such a general proviso would be insufficient to divest the agents of their discretion in devising the course by which to conduct the search. *Cf. Irving v. United States*, 162 F.3d 154, 163-64 (1st Cir. 1998 (en banc) (reviewing cases involving negligent inspection claims and observing that only specific guidelines detailing how an agent is to perform his or her inspection obviate that agent's discretion.

. . . .

> Although the attendant details could be characterized as mundane or as disengaged from any substantial policy decision, they are nonetheless critical to the performance to the performance of the discretionary scheme, and, accordingly, are entitled to the protection of the discretionary function exception.

Mid-South Holding,, 225 F.3d at 1206.

Just as the allegedly negligent conduct in Mid-South Holding and the alleged negligent and intentional conduct in B & F Trawlers[10]/ was found to fall within the discretionary function

---

[10]/   Although the B & F Trawlers court declined to incorporate the law enforcement exception into the SAA, this ruling was *dicta* in light of its holding the action was barred under the discretionary function exception. The court in B & F Trawlers based its refusal to incorporate the law enforcement exception from the FTCA into the SAA on Congress' failure to amend the SAA following the enactment of the FTCA to expressly add such an exception. B & F Trawlers, 841 F.2d at 628-29. Yet, the court had no trouble incorporating the discretionary function exception as found

exception to the SAA, so does the alleged negligent conduct set out here in plaintiffs complaint. .

It is incontrovertible that the *gravamen* of plaintiffs' allegations are that the actions of which they complain were careless, reckless and negligent.   Whether such was the case is irrelevant to the application of the exception.   In fact, it is precisely within the scope of protected activity. See *id.*

In sum, the actions of the USCG in boarding, searching and turning JOSTYN over the Ecuadoran authorities are the type of actions targeted by "Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" Berkovitz v. United States, 486 U.S. 531, 536-37 (1988) (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984)).

     E.     The Court Lacks Subject Matter Jurisdiction Over the Action Based on The "Law Enforcement" Exception to the Waiver of Sovereign Immunity In the SAA and PVA.

In addition to the discretionary function exception, the United States requests that this Court  recognize as applicable to the SAA and PVA  another exception which would bar this action. This additional exception to waiver of sovereign immunity is the "law enforcement" exception, which is explicit in the FTCA. 28 U.S.C. § 2680(c).[11]/

To the United States' knowledge, this Circuit has not decided the issue of the application of this exception to the SAA and PVA.  This case puts in stark relief why this exception to the waiver of sovereign immunity should be as applicable to admiralty matters against the United States, as it is under the FTCA to non-admiralty torts.

Although the exception has been held applicable to the SAA by district courts in the

_____

in the FTCA into the SAA. B & F Trawlers, 841 F.2d at 629 ("We and other circuit courts have for some years incorporated this exception into the SAA and PVA.").  Additionally, the court in B & F Trawlers made no attempt to distinguish its earlier decision in United States v. One 1972 Wood 19 Foot Custom Boat, 501 F.2d 1327 (5th Cir. 1974) (*per curiam*), in which it found that a counterclaim by the owner for damage to a vessel seized pursuant to drug laws was prohibited by the law enforcement exception to the FTCA.

[11]/     The United States has argued, *supra*, that this "law enforcement" exception, with respect to the FTCA, leaves undisturbed the sovereign immunity of the United States, therefore withholding subject matter jurisdiction in this matter.  That substantive discussion obviously applies as well to the application of the exception to the SAA and PVA.

Eleventh Circuit, this issue was left undecided by the <u>Mid-South</u> court in light of its holding that the discretionary function exception applied to bar plaintiff's claim. <u>Mid-South Holding</u>, 225 F.3d at 1207-08. Cf, <u>Green v. United States</u>, 658 F. Supp. 749 (S.D. Fla. 1987) (law enforcement exception held applicable to SAA); <u>Peterson and Miller v. United States</u>, 1986 WL 15639 (S.D. Ga. 1986) (law enforcement exception applicable to SAA and PVA barred cause of action for loss of vessel while in Coast Guard custody); <u>William Schacter & Assoc. v. United States</u>, 1985 WL 8804 (S.D. Fla. 1986) (law enforcement exception to SAA barred claim for damage to vessel in custody of USMS); <u>Rodriguez v. United States</u>, 1985 WL 9588 (S.D. Fla.1985). <u>Accord:</u> <u>Harrington v. United States</u>, 748 F. Supp. 919 (D.P.R. 1990) (law enforcement exception applicable to SAA barred damage to sailing vessel detained by Coast Guard).

As stated in the FTCA, the law enforcement exception as it read in 2005 precluded "[a]ny claim arising in respect of . . . the detention of any goods, merchandise or other property by any officer of customs or excise or any other law enforcement officer . . . ." 28 U.S.C. § 2680(c) (2000).

The principal decision interpreting § 2680(c) is <u>Kosak v. United States</u>, 465 U.S. 848 (1984), in which the Supreme Court barred a claim arising out of the negligent storage of art seized and held by Customs agents. In so holding, the Supreme Court found such a bar to be consistent with the three objectives most mentioned in the FTCA's legislative history as rationale for the exceptions enumerated in §2680. Those objectives are: "ensuring 'certain governmental activities' not be disrupted by the threat of damage suits; avoid exposure of the United States to liability for excessive or fraudulent claims; and not extending the coverage of the Act to suits for which adequate remedies were already available." <u>Kosak</u>, 465 U.S. 848, 858 (citations omitted). <u>Kosak</u> specifically included in the exception claims regarding damage to, or negligence concerning, seized or detained property while in the possession of law enforcement personnel. In <u>Cheney v. U.S.</u>, 972 F.2d 247, 248 (9th Cir. 1992), the panel stated:

> Cheney's claim falls within section 2680(c)'s broad exception to the FTCA's general waiver of sovereign immunity in cases arising out of the detention of property by law enforcement officers. *See Kosak*, 465 U.S. at 853-54 . . . (holding language of exception entitled to broad interpretation, including all injuries arising from a government official's detention of property) . . . .

In applying the law enforcement exception to the SAA, courts have pointed out that there is no more reason to believe that Congress, in enacting the SAA in 1920, would have desired to

"dampen" the efforts of its law enforcement personnel "by exposing the Government to private damage suits by disgruntled owners of detained property" than it did in 1948 when the FTCA was passed. Peterson, at 1986 WL 15639, p. 4, quoting *Kosak*, 465 U.S. at 859.

In addition, as observed by both courts and commentators, to deny the application of the law enforcement exception to the SAA would create the paradoxical situation where seizure and detention of property by Customs or law enforcement officers ashore would qualify for sovereign immunity while precisely the same activity at sea would subject the government to potential liability. Peterson, *id.*; Foster, To Incorporate or Not to Incorporate: That is the Question; B & F Trawlers, Inc. v. United States, 14 Tul. Mar. L. J. 175 (1989)

With respect to courts in this Circuit, as noted above, the discretionary function exception has long been recognized as implicit in the SAA and PVA, incorporated therein and applied accordingly. So too should the law enforcement exception.

This Circuit has shown itself willing to incorporate into the PVA other exceptions explicit in the FTCA at 28 U.S.C. §2680. The "combatant activities" exception to the waiver of sovereign immunity is explicit in the FTCA at 28 U.S.C. §2680(j). This Circuit in Koohi v. United States, 976 F.2d 1328, 1336 (9th Cir. 1992) incorporated such exception into the PVA:

> Unlike the FTCA, the PVA contains few express exceptions, and it does not contain an analog to the FTCA's combatant activities exception. There is precedent, however, for incorporating an FTCA exception into the PVA. . . .

(Discussing B & F Trawlers incorporating the discretionary function exception but not the law enforcement exception, and Canadian Transp. Corp. v. United States, 663 F.2d 1081, 1086 (D.C. Cir. 1980), incorporating the discretionary function exception into the SAA.) The Court continued:

> Incorporation of the combatant activities exception into the PVA seems particularly appropriate.
>
> The FTCA's combatant activities exception specifically covers activities of Navy and Coast Guard vessels. Unless a similar exception is read into the PVA, this specification will be rendered virtually meaningless. The FTCA and the PVA are mutually exclusive,[citation omitted] with only the latter providing a jurisdictional basis for tort suits arising from United States activities that "bear a significant relationship to traditional maritime activity."[citation omitted]

Therefore, if Congress's manifest intent to maintain sovereign immunity from liability arising from the combatant activities of maritime vessels is to be given meaningful effect, the combatant activities exception must be incorporated into the PVA. We therefore hold that . . . [the waiver of immunity in the PVA, like that established by the FTCA, contains an exception for combatant activities].

This Circuit's reasoning in <u>Koohi</u> with respect to that exception to the waiver of sovereign immunity applies with equal force and urgency to the law enforcement exception. There can be no reasonable or persuasive argument which distinguishes between waiver of sovereign immunity for law enforcement searches or seizures, *etc.*, solely based on whether they occur on land as compared to navigable waters. Particularly in the area of the illegal transportation and interdiction of controlled substances, the distinction is without any justification.

<u>Kosak</u> made it clear that customs and law enforcement are core governmental activities which should not be disrupted by fear of damage suits.

<u>Peterson</u>, *supra*, 1986 WL 15639.

That remains true whether search or seizure of an asset for law enforcement purposes occurs on land or navigable waters. If law enforcement activities are immune because fear of damage suits will jeopardize the particular missions, that is so wherever the interdiction occurs. The better argument and result is that sovereign immunity remains intact for matters under the SAA and PVA with respect to law enforcement matters as made explicit at 28 U.S.C. §2680(c).

The FTCA's law enforcement exception should be implied or incorporated into the SAA and PVA. This would avoid the unjustified situation where the United States would be shielded from damage claims arising out of the activities of federal law enforcement agents in seizing and detaining property on land - but not on water. Because plaintiff's damage claims are based on the alleged negligence or intentional acts of federal law enforcement agents in boarding, searching, detaining and, according to plaintiffs, seizing JOSTYN, this Court should find in accordance with the exception that such claims are precluded by sovereign immunity under the SAA and PVA.

/ / /

F.     To the Extent the PVA Provides the Waiver of Sovereign Immunity,
the Action must be dismissed pursuant to 46 U.S.C. §785.

The PVA is the admiralty waiver of sovereign immunity for loss or damage caused by a public vessel. The vessel involved in the boarding and search of JOSTYN, USS McCLUSKY, is a vessel of the United States Navy - clearly a public vessels within the meaning of 46 U.S.C. §781. See United States v. United Continental Tuna, 98 S.Ct. 1319, 425 U.S. 164, 47 L.Ed. 2d 653 (1976), on remand 560 F.2d 569 (9th Cir. 1977).  Only the PVA could provide a waiver of sovereign immunity in this case to the extent the complaint alleges a cause of action regarding damage caused by a public vessel.  See Marine Coatings of Alabama v. U.S., 932 F.2d 1370 (11th Cir. 1991).

The PVA, at 46 U.S.C. §785, withholds waiver of sovereign immunity in actions by foreign nationals (as here), unless plaintiffs carry their burden of showing that a similar action in plaintiffs' national courts (Ecuador), would be allowed if a United States national were the plaintiff there.  Not only have plaintiffs failed to carry this burden, but they has not even pleaded such.   On this additional basis the action must be dismissed for lack of subject matter jurisdiction.  See United States v. United Continental Tuna, 560 F.2d 569 (9th Cir. 1977).

G.     Plaintiffs have no Claims Under the United States Constitution.

Although plaintiffs explicitly allege subject matter jurisdiction only under the FTCA, SAA and PVA, paragraph V of their complaint appears to serve as a catch-all list of allegations which plaintiffs may at some time suggest provide jurisdiction. Nevertheless, were plaintiffs to assert constitutional violations as a basis for subject matter jurisdiction (or as the basis for anything), such must fail.

Plaintiffs admit they are all citizens of Equador, not the United States.  There is no allegation that plaintiffs have any connection with the United States at all, either geographically or legally.  The law is clear.  In United States v. Verdugo-Urquidez, 494 U.S. 259, 262 (1989), the Supreme Court rejected the argument that the fourth amendment applies to search and seizure of non-residents or their property for activities occurring outside the United States (as here.)

Paragraph V of the complaint alleges essentially such searches, purportedly resulting in damage. Such rejection of constitutional protections extend beyond the fourth amendment. See, United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 318 (1936), "Neither the Constitution nor the laws passed in pursuance of it have any force in foreign territory unless in respect of our own citizens." Plaintiffs can not base their action on violation of constitutional rights they don't possess.[12]/

H.    International Law Provides Plaintiffs no Relief.

Again, plaintiffs suggest what they don't identify - a basis for the action in alleged violation of international law or treaties. They neither identify any tenet of customary international law, or any treaty or bilateral agreement which may have been abridged, much less provide a basis for jurisdiction. As plaintiffs have no rights protected by the United States Constitution, so too they lack standing to enforce international agreements as individuals, even assuming they had identified any such agreement. "[A] decision to create a private right of action is one better left to legislative judgment." Sosa v. Alverez-Machian, 542 U.S. 692, 727 (2004.) The Supreme Court is "reluctant to infer intent to provide a private cause of action where the statute does not supply one expressly." Id.

It is worth repeating that plaintiffs identify no international law or agreement which they alleges was violated.. As noted above, plaintiffs have the burden of establishing subject matter jurisdiction. Passing references to a general topic area does not satisfy the burden. A hope as to what might exist does not establish jurisdiction.

"[A] treaty must be self-executing in order for an individual citizen to have standing to protest a violation of the treaty." United States v. Thompson, 928 F.2d 1060, 1066 (11th Cir.

---

[12]/    Even were the FTCA otherwise the source for a limited waiver of sovereign immunity in this admiralty action, which it clearly is not, "[T]he United States simply has not rendered itself liable under §1346(b) for constitutional tort claims." FDIC v. Meyer, 510 U.S. 471, 478 (1994). Plaintiffs fare no better where the matter sounds in admiralty, as here, and the only applicable waiver of sovereign immunity would be the SAA or PVA. Neither the SAA nor the PVA waives the United States' sovereign immunity for alleged constitutional claims seeking money damages. Green v. United States, 530 F.Supp. 17, 1981 A.M.C. 2754 (N.D. Cal. 1981).

1991).  "A treaty is self-executing if it both requires no implementing legislation and provides a specific private right of action."  <u>United States v. Royal Caribbean Cruises, Ltd.</u>, 11 F.Supp.2d 1358, 1367 (S.D. Fla. 1998).

Plaintiffs do not specify under which treaty they are suing, but merely state that United States agents "[v]iolated treaty obligations with Ecuador."  Plaintiffs also allege that United States agents "[v]iolated international law by boarding and seizing a foreign flagged vessel in international waters."  **Plaintiffs ignore that explicit permission to do so was given by the flag state**.  <u>See</u> Ellis declaration and Bertheau declaration.  Because "customary international law is not self-executing," *Royal Caribbean Cruises*, 11 F.Supp.2d at 1370, plaintiffs must allege specifically what gives them standing to sue.  Not having done so, this Court does not have subject matter jurisdiction to hear Plaintiffs' international law violation claims.

Without plaintiffs specifically identifying any international agreement which may provide plaintiffs relief, or alleging that such unidentified agreement is self-executing and provides a private right of action, this Court does not have subject matter to hear plaintiffs' treaty and international law violation claims.

## CONCLUSION

For the foregoing reasons, this action should be dismissed with prejudice for lack of subject matter jurisdiction.

Dated: August 31, 2007.

PETER D. KEISLER
Assistant Attorney General
KAREN P. HEWITT
United States Attorney
R. MICHAEL UNDERHILL
Attorney in Charge
West Coast Office
Torts Branch, Civil Division

s/R. Scott Blaze

R. SCOTT BLAZE
Senior Admiralty Counsel
Torts Branch, Civil Division
U.S. Department of Justice

Attorneys for Defendant
United States of America

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August __31__, 2007, I mailed by first-class mail, postage

prepaid, a copy of the foregoing UNITED STATES' MEMORANDUM IN SUPPORT OF ITS

MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1) to:


      Mr. Walter L Boyaki, Esq.
      Miranda & Boyaki
      4621 Pershing Drive
      E1 Paso, Texas 79903

      Heriberto Ramos
      Ramos & Associates
      917 Franklin , Suite 300
      Houston, Texas 77002


_Bonnie Li_

BONNIE LI