## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| OSWALDO ENRIQUE TOBAR, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action G-07-003 |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## ANSWER OF DEFENDANT UNITED STATES OF AMERICA

COMES NOW, Defendant United States of America, by and through the

undersigned counsel, and respectfully submits this Answer of Defendant United States of

America to the Complaint of Oswaldo Enrique Tobar, et al.

1.    Paragraph I does not contain allegations to which any answer is required by the

United States of America; to the extent that admissions, denials, or denials for lack of

knowledge and information would be required of the United States of America, the

allegations are denied, except it is admitted that this is an admiralty and maritime claim

within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and that this

Court has subject matter jurisdiction of Plaintiff's Complaint and action against

Defendant, United States of America, a sovereign nation, if at all, solely under the

provisions of the Public Vessels Act, 46 U.S.C. §§ 31101 *et. seq.*, and not otherwise.

2.    Paragraph II does not contain allegations to which any answer is required by the

United States of America; to the extent that admissions, denials, or denials for lack of

Ex. 1

knowledge and information would be required of the United States of America, the
allegations are denied for lack of knowledge and information.  The United States admits
that the United States Coast Guard operates facilities in Galveston, Texas.

3.      The allegations in Paragraph III are denied.

4.      Paragraph IV does not contain allegations to which any answer is required by the
United States of America; to the extent that admissions, denials, or denials for lack of
knowledge and information would be required of the United States of America, the
allegations are denied.

5.      The allegations in Paragraph V are denied

6.      The allegations in Paragraph VI are denied.

7.      The allegations in Paragraph VII are denied.

8.      The second numbered Paragraph VII does not contain allegations to which any
answer is required by the United States of America; to the extent that admissions, denials,
or denials for lack of knowledge and information would be required of the United States
of America, the allegations are denied.

## FIRST DEFENSE

9.      This Court lacks subject matter jurisdiction as to the claims against the United
States of America.

## SECOND DEFENSE

10.     The Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

2

### THIRD DEFENSE

11.   If Plaintiffs sustained injuries and damages by reason of the matters alleged in the Complaint, which are denied, then said injuries and damages were caused in whole or in part by Plaintiffs' own negligence and fault, and were not caused in any manner by any fault or negligence of the United States of America, its officers, agents, servants, employees or others for whom it was responsible.

### FOURTH DEFENSE

12.   If Plaintiffs sustained injuries and damages by reason of the matters alleged in the Complaint, which are denied, then said injuries and damages were caused in whole or in part by the acts of third parties, and were not caused or contributed to in any manner by any fault or negligence of the United States of America, its officers, agents, servants, employees or others for whom it was responsible.

### FIFTH DEFENSE

13.   This Court lacks subject matter jurisdiction over Plaintiffs' action against the United States of America in that Plaintiffs' Complaint alleges damages resulting from the exercise or performance of, or the failure to exercise or perform, discretionary or governmental functions by federal agencies, officers, agents, servants, employees or others for whom the United States of America was or is responsible, for which actions or failures the United States of America cannot be held liable.

### SIXTH DEFENSE

14.   Venue in this Court is improper.

3

## SEVENTH DEFENSE

15.     This Court lacks jurisdiction of the subject matter of Plaintiffs' complaint and

action against the United States of America in that it claims injuries or damages resulting

from law enforcement activities of the United States for which the United States of

America is not liable as a matter of substantive law.

        WHEREFORE, Defendant United States of America prays as follows:

        1.      That judgment be entered dismissing Plaintiff's action.

        2.      That the United States of America be awarded costs.

        3.      That the United States of America may have such other and further relief as

this Court may deem just and proper.


Dated:  March 2, 2007.

                                Respectfully submitted,

                                PETER D. KEISLER
                                Assistant Attorney General

                                DONALD J. DeGABRIELLE, JR.
                                United States Attorney

                                DANIEL HU
                                Assistant United States Attorney

                                STEPHEN CAMPBELL
                                Trial Attorney
                                Torts Branch, Civil Division


                                 s/ JOHN S. LUCE Jr.
                                JOHN S. LUCE Jr.

                                        4

Attorney In Charge
New York Bar # 3934213
Trial Attorney
Torts Branch, Civil Division
U. S. Department of Justice
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: (202) 616-4035
Facsimile: (202) 616-4159
E-Mail: john.luce@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| OSWALDO ENRIQUE TOBAR, ET AL, | )( | |
| | )( | |
| Plaintiffs, | )( | |
| | )( | |
| v. | )( | NO. 3:07-CV-00003 |
| | )( | |
| UNITED STATES OF AMERICA, | )( | ADMIRALTY |
| | )( | |
| Defendant. | )( | |

## JOINT DISCOVERY/CASE MANAGEMENT PLAN

Pursuant to Rule 26(f), Federal Rules of Civil Procedure, the parties file this Joint

Discovery/Case Management Plan as follows:

1.    State where and when the meeting of the parties required by Rule 26(f) was held, and
identify the counsel who attended for each party.

      March 20, 2007, by phone.  Walter L. Boyaki for Plaintiff, John S. Luce, Jr.,
for Defendant U.S.A.

2.    List the cases related to this one that are pending in any state or federal court, with the
case number and court.

      None.

3.    Briefly describe what this case is about.

      Alleged false arrest and imprisonment of Plaintiffs who are Ecuadorian
fishermen by U.S. Naval and Coast Guard personnel.  Alleged wrongful seizure
of the Plaintiffs Ecuadorian fishing vessel, willful destruction of private
property, violation of civil rights and violation of international law on the high
sea.

4.    Specify the allegation of federal jurisdiction.

      FTCA 28 U.S.C. §1346(b) and 2661.  Admiralty under 42 U.S.C. § 741, et.
seq. and Public Vessels Act, 46 U.S.C. §781, et. seq.

*PAGE 1 OF 6*

$Ex. 2.$

5.      Name the parties who disagree and the reasons.

> Defendant, United States, disagrees for the following reasons.  Plaintiffs allege an improper boarding and seizure by a United States Navy vessel on the high seas; therefore this action comes within the exclusive admiralty jurisdiction of this Court.  This Court has jurisdiction of Plaintiff's Complaint and action against Defendant, United States of America, a sovereign nation, if at all, solely under the provisions of the Public Vessels Act, 46 U.S.C. §§ 31101 *et seq.*, incorporating the consistent provisions of the Suits in Admiralty Act, 46 U.S.C. §§ 30901 *et seq.*, and not otherwise.

> The United States' Answer also sets forth affirmative defenses based on lack of subject matter jurisdiction.

6.      List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.

> None known at this time.

7.      List anticipated interventions.

> None.

8.      Describe class-action issues.

> None.

9.      State whether each party represents that it has made the initial disclosures required by Rule 26(a).  If not, describe the arrangements that have been made to complete the disclosures.

> Plaintiff will make his initial disclosure on or before April 15, 2007. Defendant U.S.A. will make their initial disclosure on or before April 15, 2007.

10.     Describe the proposed agreed discovery plan, including:

> A.      Responses to all the matters raised in Rule 26(f).

>> Prompt settlement is not feasible without depositions of facts witnesses and the parties' respective experts. The initial disclosures shall be made by April 15, 2007. No changes in the timing or form of discovery is needed at this time, except since there are non-citizen witnesses, additional time

> may be required to comply with international protocol and procedure to obtain discovery.

B.   When and to whom the Plaintiff anticipates it may send interrogatories

> Plaintiff anticipates sending Interrogatories to the Defendant by April 1, 2007.

C.   When and to whom the Defendant anticipates it may send interrogatories.

> Defendant USA anticipates sending Interrogatories to Plaintiff by May 15, 2007.

D.   Of whom and by when the Plaintiff anticipates taking oral depositions.

> Plaintiff anticipates deposing Defendant's agents including the ship's captain, the people in charge of the Coast Guard operation and some non-citizen Ecuadorian witnesses, no later than the close of discovery.

E.   Of  whom and by when the Defendant anticipates taking oral depositions.

> Defendant U.S.A. anticipates deposing the Plaintiffs, Plaintiffs' experts, and possibly non-citizen witnesses, no later than the close of discovery.

F.   When the Plaintiff (s) (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports.

> Plaintiffs by October 1, 2007
> Defendant's responsive experts by November 15, 2007

G.   List expert depositions the Plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date.  See Rule 26(a)(2)(B) expert report).

> Plaintiffs anticipates deposing Defendant expert no later than the close of discovery.

H.    List expert depositions the opposing party anticipates taking and their anticipated completion date.  See Rule 26(a)(2)(6) (expert report).

Defendant anticipates deposing Plaintiff's experts no later than the close of discovery.

11.    If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.

N/A.

12.    Specify the discovery beyond initial disclosures that has been undertaken to date.

None.

13.    State the date the planned discovery can reasonably be completed.

February 28, 2008; except since there are non-citizen witnesses, additional time may be required to comply with international protocol and procedure to obtain discovery.

14.    Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.

It is premature to reasonably discuss settlement until the depositions of the parties are completed.

15.    Describe what each party has done or agreed to do to bring about a prompt resolution.

Nothing can be reasonably be done to speed resolution until discovery is largely completed.

16.    From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable, and when such a technique may be effectively used in this case.

The parties believe mediation may be suitable after discovery is largely completed.

17.    Magistrate judges may now hear jury and non-jury trials.  Indicate the parties' joint position on a trial before a magistrate judge.

The parties do not agree to trial before a magistrate judge.

*PAGE 4 OF 6*

18.   State whether a jury demand has been made and if it was made on time.

        No demand for a trial by jury has been made and is not appropriate in this case.

19.   Specify the number of hours it will take to present the evidence in this case.

        For Plaintiffs – 3 days of trial.
        For Defendant - 2-3 days of trial.

20.   List pending motions that could be ruled on at the initial pretrial and scheduling conference.

        Defendant United States' Motion to Transfer Venue.

21.   List other motions pending.

        None.

22.   Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.

        This action involves non-citizen witnesses, including each Plaintiff; therefore, additional time may be required to comply with international protocol and procedure to obtain discovery.

23.   Certify that all parties have filed the Disclosure of Interested Persons as directed in the Order for Conference and Disclosure of Interested Person, listing the date of filing for original and any amendments.

        It is so certified. Plaintiffs filed their disclosure on January 16, 2007. Defendant United States filed its disclosure on March 9, 2007.

24.   List the names, bar numbers, addresses, and telephone number of all counsel.

        Walter L. Boyaki                        Attorney for Plaintiffs
        Miranda & Boyaki
        4621 Pershing Drive
        El Paso, Texas  79903
        (915) 566-8688; Fax: (915) 566-5906

        Mr. John S. Luce, Jr.                   Attorney for Defendant U.S.A.
        Trial Attorney
        U.S. Department of Justice

*PAGE 5 OF 6*

Aviation/Admiralty Litigation
Torts Branch, Civil Division
P.O. Box 14271
Washington, DC 20044-4271
(202) 616-4035; Fax: (202) 616-4159


/s/ Walter L. Boyaki                                    March 22, 2007

_____                            _____
**WALTER L. BOYAKI**                                   **Date**
**Attorney for Plaintiffs**

 s/ JOHN S. LUCE Jr.                                    March 22, 2007
_____                            _____
**JOHN S. LUCE, Jr.**                                          **Date**
**Attorney for Defendant U.S.A.**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

OSWALDO ENRIQUE TOBAR, *et al.*          §
                                          §
V.                                        §          CIVIL ACTION NO. G-07-3
                                          §
UNITED STATES OF AMERICA                  §

## DOCKET CONTROL ORDER

1.  October 2, 2007     **PLAINTIFF'S EXPERTS** will be designated in accordance with Rule 26(b), FRCP by this date and reports (except medical reports which can be obtained otherwise), shall be tendered. No additional experts will be permitted to testify except for good cause shown.

2.  November 9, 2007    **DEFENDANT'S EXPERTS** will be designated in accordance with Rule 26(b), FRCP by this date and reports (except I.M.E. reports which can also be obtained otherwise), shall be tendered. No additional experts will be permitted to testify except for good cause shown.

3.  December 30, 2007   **DISCOVERY** should be completed by this date. Counsel may, by agreement, continue discovery beyond the deadlines, but there will be no intervention by the Court, without a showing of extreme prejudice. No trial setting will be vacated because of information acquired in post-deadline discovery.

4.  January 4, 2008     **SIGNED JOINT PRE-TRIAL ORDER** (ORIGINAL AND ONE(1) COPY) WITH EXHIBIT LISTS, WHICH CONFORMS TO THE FORMAT SET FORTH IN APPENDIX B OF THE LOCAL RULES.

5.  January 11, 2008    **PRE-TRIAL CONFERENCE** at **12:00 p.m.**, before the Magistrate Judge. Limine matters will be addressed at this conference.

6.  January 14, 2008    **NON-JURY TRIAL DATE**: Counsel MUST be prepared for trial at **8:30 a.m.**, on this date before the District Court.

*Ex. 3*

The pretrial order shall be filed with the office of the District Clerk in <u>GALVESTON</u> and should be <u>joint</u>, succinct, brief and concise. It should be accompanied by (1) a Witness List identifying each witness, and stating whether or not such witness is or is not a fact or expert witness, and regarding the latter, the area of expertise; and (2) an Exhibit List, specifically including vertical columns and blocks, allowing for the indication of whether any piece of evidence has been "marked", "offered", "objected to", "admitted" and "date", for each and every piece of evidence.

IT IS EXPRESSLY ORDERED THAT FAILURE TO ADHERE TO THE REQUIREMENT OF JOINT AND COMPLETE SUBMISSION WILL CONSTITUTE THE BASIS FOR SEVERE SANCTIONS, UP TO AND INCLUDING THE STRIKING OF THE PLEADINGS OF ANY PARTY NOT HEREWITH COMPLYING.

FAILURE TO TENDER APPROPRIATE EVIDENCE LISTS WILL RESULT IN THE OFFENDING PARTIES' PROSCRIPTION FROM OFFERING <u>ANY</u> EVIDENCE AT THE TRIAL IN THIS CAUSE.

If this cause is on the jury docket then the Pretrial Order shall be accompanied by an <u>agreed</u>, and <u>jointly</u> prepared, full and complete jury charge, specifically including all necessary substantial and precatory instructions <u>specifically</u> including the precise details of (1) the *prima facie* elements of any cause of action asserted, (2) legal definitions required by the jury, (3) items of damages, and (4) methods of calculation of damages, <u>together with complete appropriate interrogatory forms</u>. These will be <u>joint</u>, complete, and succinct. In the event that the parties, in good faith, cannot agree upon the language of the charge, the parties will, in any event, submit a single, <u>unified</u> charge, wherein they will set out in the charge each offering, in succession, regarding which there is disagreement, separated by the word "or", with the totality of each such disputed offering to be in emboldened type, and from which the Court can make a single selection. Accompanying the charge will be all authority, citations or related materials which the offering party relies upon, to allow the Court to have an opportunity to fully and completely consider such. **FAILURE TO COOPERATE AND TO JOINTLY SUBMIT THE FULL AND COMPLETE CHARGE, WITH INCLUDED OPTIONS, AS NECESSARY, WILL RESULT IN SEVERE SANCTIONS, UP TO AND INCLUDING THE STRIKING OF THE PLEADINGS OF ANY PARTY, AND SEVERE FINANCIAL SANCTIONS ASSESSED AGAINST ANY OFFENDING ATTORNEY.** There is absolutely <u>no</u> excuse for any delay in the submission of this item.

**To insure full notice, each party who receives this notice shall contact all other counsel of record and/or any <u>pro se</u> litigants to insure receipt of notice, and as regards any counsel or <u>pro se</u> litigant claiming non-receipt, the contacting attorney shall forward a copy of it to said counsel or party.**

## N O T I C E

**FAILURE TO COMPLY WITH THIS ORDER WILL RESULT IN SANCTIONS PURSUANT TO FED.R.CIV.P. 16(f).**

**DONE** at Galveston, Texas, this 11th day of April, 2007.

Samuel B. Kent
United States District Judge



**U.S. Department of Justice**

JSLuce
Telephone: (202) 616-4035
Facsimile: (202) 616-4159

Torts Branch, Civil Division
Post Office Box 14271
Washington, D.C. 20044-4271

April 19, 2007

<u>Sent via US MAIL and
Facsimile</u>

Mr. Walter L Boyaki, Esq.
Miranda & Boyaki.
4621 Pershing Drive
El Paso, Texas 79903

Re:  Oswaldo Enrique Tobar, et al. v. United States of America
<u>U.S.D.C. S.D. Tex. Civil No: G07-003</u>
DJ # 61-74-1150

Dear Mr. Boyaki:

I am writing in furtherance of our April 18, 2007 phone conference discussing an extension of time to respond to your recent discovery requests. As discussed, we agreed that all responses and any objections to the Requests for Production, Interrogatories, and Requests for Admission that you sent on April 10, 2007 will be due on July 12, 2007. While preparing the responses, I will continue to work with you regarding the names and locations of Government witnesses.

Very truly yours,

JOHN S. LUCE Jr.
Trial Attorney

Ex. 4.
TOTAL P.02

# MIRANDA & BOYAKI

*Attorneys & Counselors-at-Law*

**(915) 566-8688**
**FAX (915) 566-5906**

RALPH MIRANDA
WALTER L. BOYAKI

JOHN G. MUNDIE
RICARDO D. GONZALEZ

4621 PERSHING DRIVE
EL PASO, TEXAS 79903

April 10, 2007

Mr. John S. Luce, Jr. , Esq.
U.S. Department of Justice
Aviation/Admiralty Litigation
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044-4271

RE:     *Tobar, et al v. U.S.A.*

Dear Mr. Luce:

      Attached are some interrogatories, request for production and admissions.

      If you need more time to answer, please advise. Meanwhile, I need to depose the Captain, and the executive officer of the McClusky, and the leader of the Coast Guard search party. I need dates and location.

      Let me know.

Sincerely,

WALTER L. BOYAKI

WLB:ll
Enclosure

**INTERROGATORY NO. 5:** What efforts were made by government personnel to insure that the Plaintiffs were involved with drug smuggling as alleged. Please include what records checks were made, when, by whom and what were the results.

**INTERROGATORY NO. 6:** Give the reason, if any, why the Plaintiffs' fishing boat was seized not just detained. List what authority did the agents of the Defendant have to board and seize the Plaintiffs boat either from its owners or the Ecuadorian government.

**INTERROGATORY NO. 7:** Give the number of days that the Plaintiffs' boat was impounded or under the control of the U.S. government. List the dates it was impounded and the reason why, if any, the boat was not turned over to its rightful owner after the initial search turn up no contraband.

**INTERROGATORY NO. 8:** List all the individuals who have any knowledge of the facts in this case, to include the incident itself, the circumstances surrounding the incident and any events leading up to the incident or a related event which occurred either before or thereafter.

**INTERROGATORY NO. 9:** List all the names, addresses, and phone numbers, of all the witnesses you expect to call to testify at the trial of this case and a summary of his or her expected testimony.

**INTERROGATORY NO. 10:** List the regulations, guidelines, and procedures applicable to your employees for the continued search and seizure of a vehicle when:

1.      It is not searched with the permission of the owner of the vessel.

2.      There are no drugs or illegal contraband on board the vessel.

**INTERROGATORY NO. 11:** If you contend that Defendant's law enforcement officers involved with Plaintiffs do not come under 28 U.S.C.§2680(h), state the factual basis for your contention.

**INTERROGATORY NO. 12:** What property, if any, of the Plaintiffs was forfeited for any actions connected to the seizure of their vessel on October 5, 2005.

**INTERROGATORY NO. 13:** What was the reason for the letters of apology sent to the Plaintiffs on October and November 2005.

**INTERROGATORY NO. 14:** Describe the damage done to Plaintiffs' vessel's cargo and the vessel itself prior to its return. List the reasons for all the damage and list any contraband that was found and where it was found.

**INTERROGATORY NO. 15:** State the amount of time that each Plaintiff was detained by agents of the Defendant. List the offenses each Plaintiff was charged with and the disposition of those charges.

**INTERROGATORY NO. 16:** List all the vessels in the last five years that were confiscated, seized and sold by the U.S. Government for drug violations that:

      1.      Were owned by the Plaintiffs.

      2.      Were under the Flag of Ecuador.

**INTERROGATORY NO. 17:** What was the reason, if any, for the strip search of the Plaintiffs before they each were released from custody.

**INTERROGATORY NO. 18:** Describe all the illegal contraband taken from any Plaintiffs. Were any weapons on board the vessel. If so, please list them.

**INTERROGATORY NO. 19:** What efforts were made during the ordeal of returning the Plaintiffs' vessel to Ecuador to:

      1.      Insure their catch of fresh fish was not spoiled;

      2.      Take care of the physical needs of the Plaintiffs' to include feeding them.

Respectfully submitted,

**MIRANDA & BOYAKI**
Attorneys at Law
4621 Pershing Drive
El Paso, Texas  79903
Tel.:  (915) 566-8688
Fax :  (915) 566-5906

By: _____

      **WALTER L. BOYAKI**
Attorney for Plaintiffs
State Bar No. 02759500

## CERTIFICATE OF SERVICE

I, **WALTER L. BOYAKI**, do hereby certify that a true and correct copy of the foregoing instrument was forwarded to **JOHN S. LUCE, JR.**, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, P.O. Box 14271, Washington, D.C. 20044-4271, on this 10 day of April, 2007.

**WALTER L. BOYAKI**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| OSWALDO ENRIQUE TOBAR, ET AL, | )( | |
| | )( | |
| Plaintiffs, | )( | |
| | )( | |
| v. | )( | NO.  G-07-003 |
| | )( | |
| UNITED STATES OF AMERICA, | )( | |
| | )( | |
| Defendant. | )( | |

## PLAINTIFFS' REQUEST FOR ADMISSIONS TO DEFENDANT

To:   United States of America, by and through its attorney of record, John S. Luce,
Jr., Torts Branch, Civil Division, U.S. Department of Justice, P.O. Box 14271,
Washington, D.C. 20044-4271.

Plaintiff in the above entitled and numbered cause requests that Defendant make the

following admissions within thirty (30) days from the service of this Request, pursuant to Rule

Rule 36, Federal Rules of Civil Procedure.

**REQUEST FOR ADMISSION NO. 1:** That agents of the Defendant boarded the Plaintiffs'
fishing vessel in international waters.

**REQUEST FOR ADMISSION NO. 2:** That agents of the Defendant seized control of the
Plaintiffs' fishing vessel in international waters.

**REQUEST FOR ADMISSION NO. 3:**  That all of the catch of fish or shark on board the
Plaintiffs' fishing vessel spoiled prior to arriving at the Port of Manta, Ecuador.

**REQUEST FOR ADMISSION NO. 4:**  That no drugs or other contraband were found on
Plaintiffs' fishing vessel(s).

**REQUEST FOR ADMISSION NO. 5:** That the U.S. Coast Guard sent a letter to the Plaintiff
requesting the cost of the lost catch of fish so that the U.S. Government could reimburse the
owners.

**REQUEST FOR ADMISSION NO. 6:** That the agents of the Defendant did not have the owners permission to search any of their fishing vessels.

**REQUEST FOR ADMISSION NO. 7:** That no drugs or contraband was found on any Plaintiff.

**REQUEST FOR ADMISSION NO. 8:** That the seizure of Plaintiffs' fishing vessels had no legal basis.

**REQUEST FOR ADMISSION NO. 9:** That agents of the Defendant escorted the Plaintiffs' fishing vessel(s) back to the port of Manta despite finding no drugs or contraband on the fishing boat(s).

**REQUEST FOR ADMISSION NO. 10:** That the Plaintiffs' fishing vessel(s) were under the control of Plaintiffs agents from on or about October 5, 2005 until on or about October 13, 2005.

**REQUEST FOR ADMISSION NO. 11:** That agents of the Defendant offered money to individual Plaintiffs in return for them informing on the other Plaintiffs.

Respectfully submitted,

**MIRANDA & BOYAKI**
Attorneys at Law
4621 Pershing Drive
El Paso, Texas  79903
Tel.:  (915) 566-8688
Fax :  (915) 566-5906

By: _____
**WALTER L. BOYAKI**
Attorney for Plaintiffs
State Bar No. 02759500

## CERTIFICATE OF SERVICE

I, **WALTER L. BOYAKI**, do hereby certify that a true and correct copy of the foregoing instrument was forwarded to **JOHN S. LUCE, JR.**, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, P.O. Box 14271, Washington, D.C. 20044-4271, on this ___ day of April, 2007.

_____
**WALTER L. BOYAKI**

*PAGE 2 OF 2*



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| OSWALDO ENRIQUE TOBAR, ET AL, | )( | |
| | )( | |
| Plaintiffs, | )( | |
| | )( | |
| v. | )( | NO.  G-07-003 |
| | )( | |
| UNITED STATES OF AMERICA, | )( | |
| | )( | |
| Defendant. | )( | |

## PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT UNITED STATES OF AMERICA

To:   United States of America, by and through its attorney of record, John S.
Luce, Jr., Torts Branch, Civil Division, U.S. Department of Justice,
P.O. Box 14271, Washington, D.C. 20044-4271.

Pursuant to Rule 34, Federal Rules of Civil Procedure, Plaintiffs file this

Request for Production:

**REQUEST TO PRODUCE NO. 1:**  A copy of the contract or agreement between the
Defendant and Ecuadorian government concerning the search and seizure of vessels in
the open sea or in Ecuadorian waters.

**REQUEST TO PRODUCE NO. 2:**  Copies of any and all incident reports, claims
files, reports, or any type of written report or advisory document whatsoever, which
was filed with or by any officer, clerk,  committee or department of Defendant which
concerns in any way Plaintiffs and seizure of Plaintiff's vessel.

**REQUEST TO PRODUCE NO. 3:**  Copies of all written reports by each person
identified in the answer to Plaintiff's Interrogatory No. 8.

**REQUEST TO PRODUCE NO. 4:**   Copies of any drawings, pictures, schematics,
videotape, etc. of the Plaintiffs' vessel, the government ship or the port of call.

**REQUEST TO PRODUCE NO. 5:**  Copies of any written procedure protocol(s) for the transport of vessels, ships, boats, etc., by the Defendant that were taken on the high seas.

 **REQUEST TO PRODUCE NO. 6:** Copies of any repair bills or body shop bills for the vessel in question.

**REQUEST TO PRODUCE NO. 7:**  If any of the persons who seized Plaintiffs' boat listed in your response to Interrogatory No. 1 are considered by you not to be employees of the United States, please produce any employment agreement or contract between the United States and that person.

**REQUEST TO PRODUCE NO. 8:**  Any and all insurance agreements under which any person or entity carrying on an insurance business may be liable to satisfy part or all of a judgment which may be rendered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

**REQUEST TO PRODUCE NO. 9:**  All photographs of Plaintiffs during their arrest any and all photographs of the Plaintiffs' vessel and its contents.

**REQUEST TO PRODUCE NO. 10:**  Copies of any and all statements previously made by any Plaintiffs concerning the subject matter of the lawsuit, including any written statement signed or otherwise adopted or approved by any Plaintiffs hereto and any stenographic, mechanical electrical or other type of recording or any transcription thereof made by any Plaintiffs hereto and contemporaneously recorded.

**REQUEST TO PRODUCE NO. 11:**  Any expert's report which has been prepared in connection with this lawsuit or the incident giving rise to this lawsuit.  If any such expert has not prepared a report, request is hereby made that one be prepared and furnished to Plaintiffs' attorney.

**REQUEST TO PRODUCE NO. 12:**  Copies of all writings and/or transcripts of any hearings or meetings conducted by the Defendant U.S.A.'s agencies or representatives which concern Plaintiffs or their vessel.

**REQUEST TO PRODUCE NO. 13:** All manuals or a similarly named book or periodical used by the U.S.A. for seizure of boats or vessels suspected of smuggling.

**REQUEST TO PRODUCE NO. 14:**  Copies of any diary, log, ships log, incident report or any other record of day to day events concerning the Plaintiffs while in federal custody or while Plaintiffs boat was impounded.

**REQUEST TO PRODUCE NO. 15:**  Copies of all documents, including contracts, plans, procedures and regulations of any kind, which defendant contends describe or affect the relationship between defendant and the various county, federal, or private agency or foreign government concerning seizure and search of their boats, ships, or vessels.

**REQUEST TO PRODUCE NO. 16:**  Copies of all documents, such as plans, specifications, standard operating procedures, diaries or logs, which contain information regarding the Plaintiffs including those documents regarding the day to day activity of the U.S. Coast Guard or U.S. Navy and the name and address of the custodian of said documents.

**REQUEST TO PRODUCE NO. 17:**  Copies of any plans, standard operating procedures or regulations regarding the holding of Plaintiffs boat or vessel in the custody of law enforcement agents of the Defendant.

**REQUEST TO PRODUCE NO. 18:**  Any Court Orders pertaining to any Plaintiffs.

Respectfully submitted,

**MIRANDA & BOYAKI**
Attorneys at Law
4621 Pershing Drive
El Paso, Texas  79903
Tel.:  (915) 566-8688
Fax :  (915) 566-5906

By: _____
**WALTER L. BOYAKI**
Attorney for Plaintiffs
State Bar No. 02759500

## CERTIFICATE OF SERVICE

I, **WALTER L. BOYAKI**, do hereby certify that a true and correct copy of the foregoing instrument was forwarded to **JOHN S. LUCE, JR.**, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, P.O. Box 14271, Washington, D.C. 20044-4271, on this _____ day of April, 2007.

_____
**WALTER L. BOYAKI**

Ecuador has been, is and
Will be an Amazonic Country

(Official Seal of the Ecuadorian Army)

ECUADORIAN ARMY
NATIONAL DIRECTORATE OF THE MERCHANT MARINE AND COAST GUARD
Guayaquil

Official Letter No. DIGMER-AJU398-O                    September 21, 2007

Doctor
Antonio Angulo Estupiñán
Minister of Transportation and Public Works
Delivered in his Office

o Whom It May Concern:

      Pursuant to the request made in Official Letter No. 0658 DM- dated September 19, 2007, I inform you that this General Directorate, at the request of the Coastguard Aggregate of the United States, Lieutenant Commander  LAWRENCE K. ELLIS, after confirming that the Fishing Vessel JOSTYN carries an Ecuadorian flag, authorization was granted to inspect the aforementioned vessel, advising you that the United States government is responsible for any damages in the event that no drugs are found, and it was authorized for such a vessel to be escorted to Port, indicating the coordinates as the point of delivery of the vessel.

      Five official pages are attached, containing the requests and the authorizations granted.

OFFICIAL SEAL                          Sincerely,
                                       God, Country and Freedom

                                       (illegible signature)

                                       Milton LALAMA Fernandez
                                       Rea Admiral
                    GENERAL DIRECTOR OF THE MERCHANT MARINE AND THE BORDER

Copy to: -File

WC/Diana

$Ex. 5$

El Ecuador ha sido, es y
Será País Amazónico



## ARMADA DEL ECUADOR
### DIRECCION GENERAL DE LA MARINA MERCANTE Y DEL LITORAL
Guayaquil
-o-

Oficio No. DIGMER-AJU-398-O                    21 de septiembre 2007

Doctor
Antonio Angulo Estupiñán
**MINISTRO DE TRANSPORTE Y OBRAS PÚBLICAS**
En su despacho

De mi consideración:

En atención a lo solicitado con oficio No. 0658 DM- del 19 de septiembre de 2007, informo a usted que esta Dirección General a pedido del Agregado de Guarda Costa de EE.UU., Capitán de Corbeta LAWRENCE K. ELLIS, luego de confirmar que el B/P JOSTYN es de bandera ecuatoriana, le concedió permiso para que se inspeccione al mencionado buque con al advertencia de responsabilizarse el gobierno de los Estado Unidos por daños y perjuicios en caso de no encontrarse droga, y se autorizó que el mencionado buque sea escoltado a Puerto indicándose las coordenadas como punto de entrega de la embarcación.

Se adjunta en 5 fojas útiles que contienen las peticiones y autorizaciones otorgadas.

Atentamente,
Dios, Patria y Libertad,

Milton LAZAMA Fernández
Contralmirante
**DIRECTOR GENERAL DE LA MARINA MERCANTE Y DEL LITORAL**

Copia para: Archivo
VVC/Diana.

# PATRICIA HERNANDEZ
## Interpreter/Translator
## 112 Silver Shadow
## El Paso, Texas 79912
## Tel. (915) 474-3993

I, the undersigned, state that:

I am a Spanish/English and English/Spanish official Court Interpreter certified in the State of New Mexico, and Licensed in the State of Texas. I have transcribed/translated the attached materials from the Spanish language into English. I declare, under penalty of perjury, that to the best of my abilities and belief, this is a true and correct transcription and translation of the same into the English language.

## DESCRIPTION OF DOCUMENT(S) OR MATERIAL(S)

DVD containing several interviews in Spanish transcribed and translated into English, of Capt. Carlos Rivera, of Ecuador, as well as a letter regarding a Ecuadorian vessel

Executed this 25th. day of September,2007 in El Paso County, Texas.

Patricia Hernandez

_____
Signature of Interpreter

State of Texas License No. 794
New Mexico Certification issued by the New Mexico Administrative Office of the Courts ion October 19, 2001
Oath on file with the Courts in El Paso County, Texas
Oath on file with the 3rd. Judicial District Court in Las Cruces, New Mexico
Texas Drivers License Number 10404701

Sworn and signed before me this _September 25_ of 2007

My commission expires: _____

_____
Notary Public

LETICIA LEAL
MY COMMISSION EXPIRES
October 10, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

OSWALDO ENRIQUE TOBAR, et al,      )
                                   )
                    Plaintiffs,    )        Civil Action G-07-003
                                   )
        v.                         )        IN ADMIRALTY
                                   )
UNITED STATES OF AMERICA           )
                                   )
                    Defendant.     )
                                   )
                                   )

## INITIAL DISCLOSURES OF DEFENDANT
## UNITED STATES OF AMERICA

Without waiving any rights, claims or defenses, and reserving its right to supplement or amend its disclosures, either by way of supplemental disclosures or responses to discovery requests, Defendant United States of America hereby submits its initial disclosures pursuant to Rule 26(a) of the Federal Rules of Civil Procedure.

1.    At this initial stage of the proceedings, the United States is not aware of the names, addresses, and telephone numbers of all witnesses likely to have discoverable information that the United States may use to support its claims or defenses in this case. At this time, the United States submits the following (contact with present and former Federal Government personnel must be arranged through counsel for the Government):

        a.    LT(jg) Torrey Bertheau, USCG

Ex. ba

b.     MK2 Kenneth Christian, USCG

c.     DC2 Corey Yates, USCG

d.     ex-BM2 Ivan Narvaez, USCG

e.     ex-MK3 Christopher Nisbet, USCG

f.     BM3 John Gentile, USCG

g.     MK3 Mike Kingsbury, USCG

h.     FC1 Jonathan Rhodes, USN

i.     ET3 Michael Huerta, USN

j.     QM3 T. J. Goss, USN

2.     At this initial stage of the proceedings, the United States is not aware of all documents, data compilations and tangible things in the possession, custody, or control of the United States, that the United States may use to support its claims or defenses in this case. At this time the United States does submit the following:

a.     Coast Guard LEDET 102 Law Enforcement Case Package.

b.     Photographs of the F/V JOSTIN.

c.     Plaintiffs' Complaint.

d.     Plaintiffs' Administrative Claim.

e.     Any disclosures of Plaintiffs, and any supplements thereto.

f.     Any responses by Plaintiffs to the Defendant United States' discovery requests, and any supplements thereto.

g.     Any depositions in this case.

2

h.    Any documents for purpose of impeachment or rebuttal.

3.    Defendant, United States of America, cannot presently compute the amount of its damages, but seeks its costs in defending this suit.

4.    There was no insurance covering the United States for the matters alleged in Plaintiffs' complaint.

Dated: April 13, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DONALD J. DeGABRIELLE, JR.
United States Attorney

DANIEL HU
Assistant United States Attorney

STEPHEN CAMPBELL
Trial Attorney
Torts Branch, Civil Division


_____
JOHN S. LUCE Jr.
Attorney In Charge
New York Bar # 3934213
Trial Attorney
Torts Branch, Civil Division
U. S. Department of Justice
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: (202) 616-4035
Facsimile: (202) 616-4159
E-Mail: john.luce@usdoj.gov

4

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 13, 2007, I served a copy of the foregoing document via first-class mail and facsimile to:

Walter L. Boyaki
MIRANDA & BOYAKI
Attorneys at Law
4621 Pershing Drive
El Paso, Texas 79903
Tel.: (915) 566-8688
Fax: (915) 566-5906


Heriberto Ramos
Ramos & Associates
917 Franklin , Suite 300
Houston, Texas 77002
Tel.: (713) 333-7025
Fax: (713) 425-4301


JOHN S. LUCE Jr.
Attorney In Charge
New York Bar # 3934213
Trial Attorney
Torts Branch, Civil Division
U. S. Department of Justice
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: (202) 616-4035
Facsimile: (202) 616-4159
E-Mail: john.luce@usdoj.gov

PETER D. KEISLER
Assistant Attorney General
KAREN P. HEWITT
United States Attorney
TOM STAHL
Assistant U.S. Attorney
Chief, Civil Division
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-5662
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
R. SCOTT BLAZE
Senior Admiralty Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 36028
450 Golden Gate Avenue, Room 7-5395
San Francisco, California  94102-3463
Telephone: (415) 436-6635
Fax: (415) 436-6632
scott.blaze@usdoj.gov

Attorney for Defendant
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSWALDO ENRIQUE TOBAR, et al. | Civil No. 07-CV-00817-WQH-WMC |
| Plaintiffs, | IN ADMIRALTY |
| v. | |
| UNITED STATES OF AMERICA, | DECLARATION OF LCDR LAWRENCE K. ELLIS IN SUPPORT OF UNITED STATES' MOTION TO DISMISS |
| Defendant. | |

Lawrence K. Ellis, being duly sworn, declares:

1.     I am a Lieutenant Commander in the United States Coast Guard.  I am presently serving as the Operations Officer of the U.S. Coast Guard Cutter WAESCHE.  From October 22, 2004 through the summer of 2007 I was assigned to duty at the United States Embassy located in Quito, Ecuador.

2.     I make this declaration on personal knowledge in support of the United States' Motion to Dismiss in this action.

Ex.7.

1    3.    In my capacity as an officer assigned to duty at the U.S. Embassy in Quito, I am

2  familiar with all United States maritime law enforcement activity relating to Ecuadorian flagged

3  vessels during my period of assignment.

4    4.    As a result of my duties at the U.S. Embassy in Ecuador, I have personal knowledge

5  of and am fully familiar with the actions taken by Coast Guard law enforcement personnel and other

6  facts relating to the boarding of the fishing vessel (F/V) JOSTYN on or about October 4, 2005.

7    5.    On or about October 4, 2005, the USS McCLUSKY, a United States Navy frigate

8  with an embarked Coast Guard Law Enforcement Detachment (LEDET) came upon the F/V

9  JOSTYN while on routine patrol in the Eastern Pacific in international waters. The F/V JOSTYN

10  was the subject of an active and ongoing law enforcement investigation and was suspected of being

11  engaged in drug trafficking. The F/V JOSTYN was flying the national flag of Ecuador at the time it

12  was encountered.

13    6.    The United States initiated an inquiry to the Government of Ecuador to (a) seek

14  confirmation from the Government of Ecuador that the F/V JOSTYN was an Ecuadorian vessel and

15  (b) if so confirmed, request permission from the Government of Ecuador as the flag state of F/V

16  JOSTYN to conduct a law enforcement boarding of the F/V JOSTYN.

17    7.    As an officer assigned to the U.S. Embassy in Quito, I was authorized to commence

18  that inquiry to the Government of Ecudaor. In response to the inquiry from the United States, the

19  Government of Ecuador confirmed that the F/V JOSTYN was an Ecuadorian vessel. The

20  Government of Ecuador also provided specific permission for the Coast Guard LEDET on scene to

21  conduct a full law enforcement boarding and search of the F/V JOSTYN at sea.

22    8.    Permission from the Government of Ecuador to conduct the boarding of the F/V

23  JOSTYN was provided directly to me by the Maritime Authority of Ecuador (DIGMER) on or about

24  October 4, 2005 and further confirmed by the Ministry of Foreign Affairs of Ecuador in the form of

25  both oral and written communications with which I am personally familiar.

26    9.    The Coast Guard LEDET on scene then conducted an at-sea boarding of the F/V

27  JOSTYN in international waters. After completing as much of a law enforcement boarding as was

28

DECLARATION OF LCDR LAWRENCE K. ELLIS
IN SUPPORT OF UNITED STATES' MOTION TO DISMISS        2                07-CV-00817-WQH-WMC

Ex. 8

1   possible given the at-sea conditions and accessibility of the vessel spaces while under way, the

2   LEDET reported, *inter alia*, that no distribution amounts of contraband were located during the

3   boarding and search at-sea.

4       10.    At no time during the at-sea boarding did any Coast Guard personnel conduct any

5   destructive search of the F/V JOSTYN, including drilling into vessel surfaces or spaces, the use of

6   boroscopes or other devices to view concealed or confined spaces, or other similar intrusive search

7   techniques.

8       11.    After the at-sea portion of the boarding was completed, the United States requested

9   additional instructions from the Government of Ecuador as to Ecuador's desired disposition for the

10  F/V JOSTYN.  I communicated that request to the Government of Ecuador.  The Government of

11  Ecuador (DIGMER and the Ministry of Foreign Affairs) then informed the United States, via the

12  U.S. Embassy in Quito, that law enforcement personnel of the Government of Ecuador would

13  conduct a more thorough boarding of the F/V JOSTYN dockside at Puerto Bolivar (an Ecuadorian

14  port) and requested that the United States Coast Guard escort the F/V JOSTYN to the 12 nautical

15  mile limit of Ecuador's territorial waters, at which point F/V JOSTYN would be turned over to the

16  Ecuadorian government.  The Government of Ecuador further requested that Coast Guard law

17  enforcement personnel provide technical assistance to Ecuadorian law enforcement personnel in

18  connection with the dockside boarding and search.  The Government of Ecuador communicated

19  these instructions and requests on or about October 7, 2005

20      12.    Pursuant to the request of the Government of Ecuador, the F/V JOSTYN was escorted

21  to the 12 nautical mile limit where it was turned over to the Ecuadorian authorities The F/V

22  JOSTYN subsequently pulled into port  at Puerto Bolivar on or about October 13, 2005.  As

23  requested by the Government of Ecuador, a Coast Guard LEDET was sent to Ecuador from

24  California to provide assistance to the law enforcement authorities of Ecuador in completing the

25  boarding and search of F/V JOSTYN.  After F/V JOSTYN was turned over to Ecuadorian

26  authorities, all boardings, searches and law enforcement activities with respect to the F/V JOSTYN

27  were conducted by Ecuadorian law enforcement personnel and authorities.  The Coast

28

DECLARATION OF LCDR LAWRENCE K. ELLIS
IN SUPPORT OF UNITED STATES' MOTION TO DISMISS          3                    07-CV-00817-WQH-WMC

Guard LEDET on scene in Puerto Bolivar provided only technical assistance under the direct control and authority of Ecuadorian law enforcement pursuant to the Ecuadorian government's request.

13.    I was personally present during the dockside boarding at Puerto Bolivar and observed the boarding and search by Ecuadorian law enforcement personal.  At no time did Coast Guard personnel provide anything other than technical assistance or advice during the dockside boarding and Coast Guard personnel did not take any action with respect to a search or boarding activity that was not specifically directed by an Ecuadorian law enforcement officer. The Master of the F/V JOSTYN was present at all times during the dockside boarding and he made no complaint or objection to any of the activities of the personnel conducting the boarding and search.    I declare under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the foregoing is true and correct.

Executed on August 30, 2007

LAWRENCE K. ELLIS   LCDR, USCG

DECLARATION OF LCDR LAWRENCE K. ELLIS
IN SUPPORT OF UNITED STATES' MOTION TO DISMISS          6                    07-CV-00817-WQH-WMC

1  PETER D. KEISLER
   Assistant Attorney General
2  KAREN P. HEWITT
   United States Attorney
3  TOM STAHL
   Assistant U.S. Attorney
4  Chief, Civil Division
   880 Front Street, Room 6293
5  San Diego, California  92101-8893
   Telephone: (619) 557-5662
6  R. MICHAEL UNDERHILL
   Attorney in Charge, West Coast Office
7  Torts Branch, Civil Division
   R. SCOTT BLAZE
8  Senior Admiralty Counsel
   Torts Branch, Civil Division
9  U.S. Department of Justice
   P.O. Box 36028
10 450 Golden Gate Avenue, Room 7-5395
   San Francisco, California  94102-3463
11 Telephone: (415) 436-6635
   Fax: (415) 436-6632
12 scott.blaze@usdoj.gov

13 Attorney for Defendant
   United States of America

14                    UNITED STATES DISTRICT COURT

15                   SOUTHERN DISTRICT OF CALIFORNIA

16

17 OSWALDO ENRIQUE TOBAR, et al.        ) Civil No. 07-CV-00817-WQH-WMC
                                        )
18            Plaintiffs,               ) IN ADMIRALTY
                                        )
19       v.                             )
                                        )
20 UNITED STATES OF AMERICA,            ) DECLARATION OF BRAD J.
                                        ) KIESERMAN IN SUPPORT OF UNITED
21            Defendant.                ) STATES' MOTION TO DISMISS
   _____   )

22 DECLARATION OF BRAD J. KIESERMAN IN SUPPORT OF UNITED STATES' MOTION TO
   DISMISS
23
        Brad J. Kieserman, being duly sworn, declares:
24
        1.      I am an attorney and have been employed as the Chief of Operations Law at U.S.
25
   Coast Guard Headquarters since 2004.  In 2006 I retired from the U.S. Coast Guard at the rank of
26
   Lieutenant Commander after a 20 year career on active duty.  I remain employed as the Chief of
27

28

DECLARATION OF BRAD J. KIESERMAN IN
SUPPORT OF UNITED STATES' MOTION TO DISMISS          1                    07-CV-00817-WQH-WMC

1   Operations Law as a GS-15 civilian employee.  My previous Coast Guard assignments included

2   Commanding Officer of a U.S. Coast Guard cutter, legal counsel to the Chief of Law

3   Enforcement at Coast Guard Headquarters from 2001 to 2004 and as an attorney in the Office of

4   Maritime and International Law at Coast Guard Headquarters from 2000 to 2001.  During my

5   period of enlisted service I served, *inter alia*, as a boarding officer and boarding team member

6   and supervised, conducted or participated in over 1000 Coast Guard law enforcement boardings.

7        2.       I make this declaration on personal knowledge in support of the United States'

8   Motion to Dismiss in this action.

9        3.       In my capacity as legal advisor to the Chief of Law Enforcement and in my

10  capacity as Chief of Operations Law at U.S. Coast Guard Headquarters I am fully familiar with

11  the facts and courses of action in all U.S. Coast Guard boardings of stateless or foreign flagged

12  vessels suspected of engaging in illicit trafficking in violation of U.S. law and the 1988 United

13  Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances

14  between 2001 and the present.  My duties and responsibilities in those capacities include

15  oversight and counsel with respect to matters of law and Coast Guard policy, in real-time,

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

DECLARATION OF BRAD J. KIESERMAN IN
SUPPORT OF UNITED STATES' MOTION TO DISMISS          2                    07-CV-00817-WQH-WMC

1    relating to the boarding of foreign flagged vessels suspected of drug trafficking.

2        4.      As part of my duties as the Chief of Operations Law, I have personal knowledge

3    of and am fully familiar with the actions taken by Coast Guard law enforcement personnel and

4    other facts relating to the boarding of the fishing vessel F/V JOSTYN on or about October 4,

5    2005.

6        5.      As the Chief of Operations Law, I am also the editor and chief for the Coast

7    Guard's Maritime Law Enforcement Manual, COMDTINST M16247.1D (MLEM).  The MLEM

8    is the single source governing policy document for Coast Guard law enforcement activities.

9    Among other things, the MLEM summarized many of the bases for Coast Guard maritime

10   law enforcement authority under domestic and international law and policy guidance regarding the

11   conduct of law enforcement boarding activity by Coast Guard personnel.

12       6.      My duties and responsibilities also include editorial authority and supervision

13   over the Coast Guard's Maritime Counter Drug and Alien Migration Interdiction Operations

14   Manual, COMDTINST M16247.4 (series) (CD – AMIO Manual).  The CD – AMIO Manual

15   provides guidance with respect to tactics, techniques and procedures that boarding teams *may* use

16   in conducting the Coast Guard's counterdrug and immigration enforcement law enforcement

17   missions and, in particular, boarding activity associated with those missions.  The decision as to

18   the method of boarding, search, *etc.* is explicitly left to the on-scene personnel, and the MLEM

19   and CDMAIO strictly for internal guidance.

20       7.      Relevant excerpts from the MLEM and CD – AMIO Manual are attached to this

21   declaration, cited with reference to the applicable manual chapter and section.

22       8.      Any armed intervention by uniformed Coast Guard personnel to detect and/or

23   suppress violations of applicable law is deemed maritime law enforcement (MLE) under Coast

24

25

26

27

28

1  Guard policy.  (See MLEM Chapter 2.A.1) (Tab A).   14 U.S.C. § 89 is the principal source of

2  Coast Guard MLE authority.  *Id.*  At all times, the Coast Guard is operating under its authority in

3  14 U.S.C. §89 whenever it conducts maritime law enforcement.

4          9.      Under Coast Guard policy, the determination of whether to conduct a boarding is

5  a matter that is left to the discretion of the on-scene Commander and the Boarding Officer.

6  There is no Coast Guard policy that mandates that law enforcement boardings be conducted on

7  particular vessels or under particular circumstances.  See MLEM Chapter 2. B.3, 2.B.4,

8  particularly 2.B.4.h. (Tab B); CDMAIO Sections 1, 4(a), 4(d) and 4(e). (Tab C).

9          10.     The on-scene Commander or other Officer in Charge is responsible for overall

10  supervision of any boarding while the Boarding Officer is responsible for the proper conduct of

11  the boarding and assembling the boarding team from qualified personnel.  Among other things,

12  Coast Guard personnel considering any law enforcement boarding activity are guided to conduct

13  a risk assessment in which various factors, including the safety of lives at sea, the effect of the

14  contemplated boarding on commercial activity, the type of illegal activity suspected, and other

15  factors, are considered in deciding whether, when, and how to conduct a boarding.

16          11.     Coast Guard personnel at Coast Guard Headquarters in Washington and the

17  applicable District or Area Headquarters units are available to provide guidance and advise to

18  on-scene personnel, but the decision to conduct a boarding, the personnel who shall comprise the

19  boarding team, and the manner of conducting the boarding is always left to the discretion of the

20  on-scene Commander or Officer in Charge and Boarding Officer, within the limits of Coast

21  Guard authority under domestic and international law and Coast Guard policy set forth in the

22  MLEM.

23          12.     On or about October 4, 2005, the USS McCLUSKY, a United States Navy frigate

24

25

26

27

28

1   with an embarked Coast Guard Law Enforcement Detachment (LEDET) came upon the F/V

2   JOSTYN while on routine patrol in the Eastern Pacific in international waters. The F/V

3   JOSTYN was the subject of an active and ongoing law enforcement investigation and was

4   suspected of being engaged in drug trafficking. The F/V JOSTYN was flying the national flag of

5   Ecuador at the time it was encountered. During all times relevant to the boarding of the F/V

6   JOSTYN, the USS McCLUSKY was under tactical control of the Coast Guard.

7          13.    In accordance with Article 17 of the 1988 U.N. Convention against Illicit Traffic

8   in Narcotic Drugs and Psychotropic Substances to which both the United States and Ecuador are

9   parties, the United States initiated an inquiry to the Government of Ecuador to (a) seek

10  confirmation from the Government of Ecuador that the F/V JOSTYN was an Ecuadorian vessel

11  and (b) if so confirmed, request permission from the Government of Ecuador as the flag state of

12  F/V JOSTYN to conduct a law enforcement boarding of the F/V JOSTYN.

13         14.    LCDR Larry K. Ellis, a Coast Guard officer who was assigned to duty at the

14  United States Embassy in Quito, Ecuador, commenced the above referenced inquiry to the

15  Government of Ecuador.

16         15.    In response to the inquiry from the United States, the Government of Ecuador

17  confirmed that the F/V JOSTYN was an Ecuadorian vessel. The Government of Ecuador

18  specifically granted permission for the Coast Guard LEDET on scene to conduct a full law

19  enforcement boarding and search of the F/V JOSTYN at sea, all pursuant to the flag state

20  authority of Ecuador.

21         16.    Permission from the Government of Ecuador to conduct the boarding of the F/V

22  JOSTYN was provided by the Maritime Authority of Ecuador (DIGMER) and further confirmed

23  by the Ministry of Foreign Affairs in Ecuador via oral communications with LCDR Ellis and

24

25

26

27

28

DECLARATION OF BRAD J. KIESERMAN IN
SUPPORT OF UNITED STATES' MOTION TO DISMISS              5                    07-CV-00817-WQH-WMC

written communications. I have personal knowledge of such communications as a result of my oversight and supervision of counterdrug law enforcement activities in my capacity as the Chief of Operations Law.

17.     The Coast Guard LEDET on scene then conducted an at-sea boarding of the F/V JOSTYN in international waters. After completing as much of a law enforcement boarding as was possible given the at-sea conditions and accessibility of the vessel spaces while under way, the LEDET reported, *inter alia*, that no distribution amounts of contraband were located during the boarding and search at-sea.

18.     At no time during the at-sea boarding did any Coast Guard personnel conduct any destructive search of the F/V JOSTYN, including drilling into vessel surfaces or spaces, the use of boroscopes or other devices to view concealed or confined spaces, or other similar intrusive search techniques.

19.     After the at-sea portion of the boarding was completed, the United States requested additional instructions from the Government of Ecuador as to Ecuador's desired disposition for the F/V JOSTYN. The Government of Ecuador informed the United States that law enforcement personnel of the Government of Ecuador would conduct a more thorough boarding of the F/V JOSTYN dockside at Puerto Bolivar (an Ecuadorian port) and requested that the United States Coast Guard escort the F/V JOSTYN to a position approximately 12 nautical miles off the coast of Ecuador, at which point F/V JOSTYN would be turned over to the Ecuadorian law enforcement personnel. The Government of Ecuador further requested that Coast Guard law enforcement personnel provide technical assistance to Ecuadorian law enforcement personnel in connection with the dockside boarding and search.

20.     Pursuant to the request of the Government of Ecuador, the F/V JOSTYN was escorted to a position approximately 12 nautical miles off the coast of Ecuador where it was turned over to the Ecuadorian authorities.  The F/V JOSTYN subsequently arrived in port at Puerto Bolivar on or about October 13, 2005.  As requested by the Government of Ecuador, a Coast Guard LEDET was sent to Ecuador from California to provide assistance to the law enforcement authorities of Ecuador in completing the boarding and search of F/V JOSTYN. After F/V JOSTYN was turned over to Ecuadorian authorities, all boardings, searches and law enforcement activities with respect to the F/V JOSTYN were conducted by Ecuadorian law enforcement personnel and authorities. Again, pursuant to the request of the Government of Ecuador, a Coast Guard LEDET was sent to Ecuador from California to provide assistance to the law enforcement authorities of Ecuador in completing the boarding and search of F/V JOSTYN. The Coast Guard LEDET on scene in Puerto Bolivar provided only technical assistance under the direct control and authority of Ecuadorian law enforcement pursuant to the Ecuadorian government's request.

21.     Throughout the period when the F/V JOSTYN was at-sea and while Coast Guard personnel were on-scene, any and all fish catch on board the F/V JOSTYN remained iced, fresh and available to the crew of F/V JOSTYN.  At all relevant times, the crew of F/V JOSTYN remained on board F/V JOSTYN with free access to all spaces and equipment on board the vessel.  No member of JOSTYN crew was arrested.  No member of the crew was imprisoned or restrained in any way.  They remained free to access any part of the vessel, or the smaller vessels which JOSTYN was towing, and they did so.  No injuries to the crew were reported.

22.     The activities described above were entirely consistent with customary international maritime law relating to exclusive flag state jurisdiction and with Coast Guard

policy which permits Coast Guard law enforcement personnel to conduct boardings pursuant to foreign flag state authorization, to escort vessels pursuant to foreign flag state authority and to provide assistance in the enforcement of a foreign flag state's laws.

I declare under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the foregoing is true and correct.

Executed on August 30, 2007.

BRAD J. KIESERMAN

1  PETER D. KEISLER
   Assistant Attorney General
2  KAREN P. HEWITT
   United States Attorney
3  TOM STAHL
   Assistant U.S. Attorney
4  Chief, Civil Division
   880 Front Street, Room 6293
5  San Diego, California 92101-8893
   Telephone: (619) 557-5662
6  R. MICHAEL UNDERHILL
   Attorney in Charge, West Coast Office
7  Torts Branch, Civil Division
   R. SCOTT BLAZE
8  Senior Admiralty Counsel
   Torts Branch, Civil Division
9  U.S. Department of Justice
   P.O. Box 36028
10 450 Golden Gate Avenue, Room 7-5395
   San Francisco, California 94102-3463
11 Telephone: (415) 436-6635
   Fax: (415) 436-6632
12 scott.blaze@usdoj.gov

13 Attorney for Defendant
   United States of America

14                 UNITED STATES DISTRICT COURT

15              SOUTHERN DISTRICT OF CALIFORNIA

16 OSWALDO ENRIQUE TOBAR, et al.        ) Civil No. 07-CV-00817-WQH-WMC
                                        )
17          Plaintiffs,                 ) IN ADMIRALTY
                                        )
18          v.                          )
                                        )
19 UNITED STATES OF AMERICA,            ) DECLARATION OF LT TORREY
                                        ) BERTHEAU IN SUPPORT OF
20          Defendant.                  ) UNITED STATES' MOTION TO
   _____  ) DISMISS
21

22      Torrey Bertheau, being duly sworn, declares:

23

24

25

26

27

28

1     1.     I am a Lieutenant in the United States Coast Guard (USCG), and am

2 presently serving as the Operations Officer at Pacific Tactical Law Enforcement Team,

3 San Diego, California.

4     2.     On or about October 4, 2005, I was serving as Commanding Officer of the

5 Coast Guard Law Enforcement Detachment (LEDET) and as boarding officer

6 with respect to the boarding and search of F/V JOSTYN in international waters

7 approximately 300 miles off the coast of Ecuador. At the time of the JOSTYN boarding,

8 I had been acting in the same capacity as boarding officer for approximately four years.

9     3.     I make this declaration on personal knowledge in support of the United

10 States' Motion to Dismiss in this action.

11     4.     In my capacity as boarding officer, I was the commanding officer of the

12 LEDET which boarded JOSTYN on or about October 4, 2005 and conducted at sea a

13 full law enforcement boarding and search of the vessel.  JOSTYN had been the

14 subject of an active and ongoing law enforcement investigation and was suspected of

15 engagement in illegal drug trafficing.  JOSTYN was flying the Ecuadoran flag when

16 encountered.  The extent of the search was limited by the conditions of the vessel being

17 at sea. I remained on board JOSTYN from the initial boarding until the vessel was

18 turned over to the Government of Ecuador (GOE) approximately one week later.

19     5.     At-sea searches of vessels suspected of involvement in transportation of

20 illegal drugs involve, as a minimum, (a) boarding the subject vessel at sea, (b)

21 examination and investigation of the vessel spaces, particularly tankage on board, with

22 attendant determination of the tankage or space capacity, (c) determination whether the

23 reported capacities, number of tanks and spaces match information provided by the

24 captain and crew of, in this case, JOSTYN, and search and examination of the tankage

25 and other spaces to the extent determined given the conditions on scene.  The decision

26 to board and search JOSTYN presupposed that all these operations would be carried

27

28

1 | out, at least to the extent possible within the discretion of the USCG, myself included.
2 | In the case of JOSTYN, a complete search of all the tank spaces was not possible due
3 | to at-sea conditions. As commander on-scene of the LEDET, I determined that the
4 | process of transferring fuel from one tank to another at sea, while allowing a more
5 | definitive search for drugs, *etc.*, secreted in fuel tanks, would also increase the risk the
6 | vessel would become unstable with the shifting of ballast.
7 |      6.    It was within the discretion of the USCG, under the USCG authorizing
8 | statute, 14 U.S.C. §89, along with the Maritime Law Enforcement Manual (MLEM) and
9 | the Counter Drug and Alien Migrant Interdiction Operations (CDMAIO), to determine
10 | whether a vessel should be boarded and searched, as well as the method by which
11 | such should be carried out. The MLEM and CDMAIO provide internal guidance to,
12 | among others, boarding officers, but leave the final decisions as to method of boarding
13 | and search operations to the on-scene personnel, who are in the best position to
14 | determine how to proceed given the conditions. For instance, the CDMAIO, at §4(d),
15 | p.2, provides, "Operational units should review the tactics, techniques, and procedures
16 | described within and incorporate them as appropriate into unit plans and activities. As
17 | doctrine, the majority of guidance in this publication is non-directive and offers the unit
18 | options that can be used depending on the specific circumstances at hand."
19 |      7.    In the case of JOSTYN, the decision to conduct a full law enforcement
20 | boarding and search, approved in advance by the flag-state, the GOE, necessarily
21 | included the following activities - stopping and searching the vessel, examining and
22 | searching tankage and spaces, all as described in paragraph 3 above. These activities
23 | were in fact necessary to carry out the decision, approved by the GOE, to conduct a full
24 | law enforcement boarding and search. None of the JOSTYN crew members was
25 | subjected to search, none of the crew members was arrested, and none was
26 | imprisoned. No crew members reported any injury nor did any appear to be injured.
27 |
28 |

The crew members were on board when the LEDET boarded the vessel, and remained on board when the government of Equador instructed the LEDET to escort JOSTYN to the edge of Equador's territorial waters (12 nautical miles).  To my knowledge, the JOSTYN crew remained on board JOSTYN while she was escorted by Equadoran authorities to a pierside location in Equador where a more complete search was conducted by the GOE.

I declare under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the foregoing is true and correct.

Executed on August 30, 2007

TORREY BERTHEAU
Lieutenant, U.S.C.G

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 31, 2007, I mailed a copy of the foregoing DECLARATION OF LT TORREY BERTHEAU IN SUPPORT OF UNITED STATES' MOTION TO DISMISS by first-class mail, postage prepaid, to:

Walter L Boyaki, Esq.
Miranda & Boyaki
4621 Pershing Drive
E1 Paso, Texas 79903

Albert W. Morris
1025 Cynthia Ave.
Pasadena, California 91107

BONNIE LI