**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OSWALDO ENRIQUE TOBAR, et al., | CASE NO. 07cv817 WQH (WMc) |
| Plaintiffs, | ORDER |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the mandate issued by the Court of Appeals for the Ninth Circuit.

**I.    Background**

On May 4, 2007, Plaintiffs[1] initiated this action by filing a Complaint against the United States. (ECF No. 1). The Complaint alleged that on October 5, 2005, the United States Coast Guard Law Enforcement Detachment unlawfully and negligently stopped, searched, and detained Plaintiffs, residents of Ecuador, in international waters destroying the cargo and fish

---

[1] The named Plaintiffs are: Oswaldo Enrique Tobar, Francisco Gabriel Yole Arteago, Fausto Lupercio Arias Castaneda, Frabricio Bayron Cedeno, Joffre Johnny Cedeno, Lindon Cleofe Cedeno, Ramon Eliades Ramon Velez Cedeno, Daniel David Quimi Chalen, Pablo Eduardo Lucas Conforme, Ramon Eduardo Pilligua Conforme, Ciro Mariano Lopez Mero, Pedro Manuel Lopez Mero, Jose Eduardo Lucas Mero, Luis Antonio Penafiel Mero, Pedro Jose Reyes Mero, Telmo Arcadio Chica Obando, Luis Miguel Cedeno Pico, Jaime Gustavo Palma Pinargote, Yardy Klever Flores Segovia, Pacho Hernandez Solorzano, Carlos Wilfrido Veliz Velez, Jose Luis Zambrano Zambrano, Carlos Orlando Velez Zambrano, Rosa Carmelina Zambrano Lucas, Junior Ivan Pico Alava, Segundo Matias Zambrano Alonzo.

owned by Plaintiffs. The Complaint asserted claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2661, *et seq.,* the Suits in Admiralty Act ("SAA"), 46 U.S.C. §§ 30901-30918, and the Public Vessels Act ("PVA"), 46 U.S.C. §§ 31101-31113.

On August 31, 2007, the United States filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The United States contended in part that the Suits in Admiralty Act ("SAA") does not provide a basis for subject matter jurisdiction in this action because the discretionary function applies retaining sovereign immunity for the United States.

On September 5, 2007, Plaintiffs filed a Motion to Compel Discovery and contended that "Defendant's motion relies on jurisdictional issues which are so intertwined with substantive issues that discovery is needed to oppose facts raised by the motion." (ECF No. 24 at 2). "Plaintiffs contend [ed that] they require additional information about facts underlying the discretionary function defense ...." *Id*.

The Magistrate Judge denied the Motion to Compel stating: "[the Court] finds that such discovery is not necessary to demonstrate facts in opposition to the jurisdictional issues raised in Defendant's 12(b)(1) motion." *Id*. at 3. The Magistrate Judge stated that "Plaintiffs have confirmed ... that the government has complied with the Court's order [to produce and exchange the actual documents identified in their Rule 26 disclosure lists]." *Id*. The Magistrate Judge stated that "[f]rom the numerous exhibits submitted by Plaintiffs in support of their motion to compel, it is clear that Plaintiffs have ample material with which to oppose Defendant's motion to dismiss." *Id*.

On January 15, 2008, this Court issued an order stating:

> [A] well-recognized exception to the SAA's general waiver of the sovereign immunity is the "discretionary function" exception. *Earles v. United States,* 935 F.2d 1028, 1032 (9th Cir. 1991). The Supreme Court has articulated two factors (the "*Gaubert* factors") for courts to consider when determining whether the discretionary function exception applies to a particular case: (1) whether the nature of the challenged conduct involved "an element of judgment or choice," and (2) whether "social, economic or political policy" considerations are implicated. *United States v. Gaubert,* 499 U.S. 315, 322-23 (1991); *see also Berkovitz v. United States,* 486 U.S. 531, 536-37 (1988).
> ...
> Plaintiffs allege that the Coast Guard unlawfully stopped,

| | |
|---|---|
| 1 | searched and seized Plaintiffs' vessel suspected of drug smuggling. To support the contention that this allegedly unlawful conduct was discretionary, the United States submitted the Declaration of Brad J. Kieserman, the Chief of Operations Law at U.S. Coast Guard Headquarters, who attests that "[a]t all times, the Coast Guard is operating under its authority in 14 U.S.C. § 89 whenever it conducts maritime law enforcement," and that "the decision to conduct a boarding, the personnel who shall comprise the boarding team, and the manner of conducting the boarding is always left to the discretion of the on-scene Commander or Officer in Charge and Boarding Officer." *Kieserman Decl.* ¶¶ 8, 11. The first *Gaubert* factor is satisfied because the only evidence in the record demonstrates that the decision to stop, board, search and seize suspected drug smuggling vessels and the manner in which government agents conduct such activity is discretionary. *See* 14 U.S.C. § 89(a); *Mid-South Holding Co.,* 225 F.3d at 1205; *Kieserman Decl.* ¶¶ 8, 11. The second *Gaubert* factor is satisfied because the challenged conduct implicates "social, economic or political policy considerations" in light of Congress' declaration that "trafficking in controlled substances aboard vessels is a serious international problem and universally condemned" and that "such trafficking presents a specific threat to the security and societal well-being of the United States." *See B&F Trawlers, Inc.,* 841 F.2d at 631 (quoting 46 U.S.C. § 1902). The Court concludes Plaintiffs have failed to establish subject matter jurisdiction under the SAA because the discretionary function exception applies, retaining sovereign immunity. |

(ECF No. 27 at 4-8).

On February 5, 2008, Plaintiffs filed a First Amended Complaint. (ECF No. 28). The First Amended Complaint asserted that subject matter jurisdiction exists pursuant to: (1) the PVA; (2) the SAA; (3) the Alien Tort Statute, 28 U.S.C. § 1350; (4) the Convention on the Law of the Sea; (5) the International Covenant on Civil and Political Rights ("ICCPR"); and (6) a bilateral treaty between Ecuador and the United States concerning the use of an Air Force base at Manta, Ecuador.

On June 5, 2008, the United States filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction.

On August 19, 2008, the Magistrate Judge issued an order staying discovery. (ECF No. 56). The Magistrate Judge stated: "Plaintiffs ... argue that discovery is needed to prove-up more facts to substantiate a waiver of sovereign immunity." *Id*. at 2 (quotation omitted). The Magistrate Judge stated: "This Court has reviewed the Declaration [of the individual Plaintiffs seek to depose] and finds that a deposition of the declarant is not necessary to discover facts pertinent to a waiver of sovereign immunity." *Id*. at 4. The Magistrate Judge explained that the declarant identified the bilateral lease agreement, but "the bilateral lease agreement speaks

for itself: it is not a treaty." *Id.* The Magistrate Judge concluded that "no discovery is appropriate at this time because the character and effect of the bilateral lease agreement can be determined as a matter of law ...." *Id.* at 4-5.

On September 19, 2008, this Court issued an order stating in part:

> The Court's January 15, 2008 order concluded that "Plaintiffs have failed to establish subject matter jurisdiction under the SAA because the discretionary function exception applies, retaining sovereign immunity." (ECF No. 27 at 8-9). The FAC does not allege additional facts with respect to the SAA. Plaintiffs' opposition to the instant Motion to Dismiss restates the arguments made in their opposition to the United States' initial motion to dismiss with respect to why the discretionary function should not apply to this action. The Court already considered and rejected these arguments in the January 15, 2008 order. The Court concludes that the SAA is not a valid basis for subject matter jurisdiction because the discretionary function exception to the United States' waiver of sovereign immunity under the SAA applies, retaining the sovereign immunity of the United States under the SAA.

(ECF No. 57 at 7-8). The Court dismissed the First Amended Complaint for lack of subject matter jurisdiction.

On September 22, 2008, judgment was entered. On October 22, 2008, Plaintiffs filed a notice of appeal from the order dismissing the First Amended Complaint for lack of subject matter jurisdiction. (ECF No. 59).

On April 21, 2011, the Court of Appeals for the Ninth Circuit issued an order affirming in part, vacating in part, and remanding the case to this Court. On June 16, 2011, the Court of Appeals issued its formal mandate. (ECF No. 70).

The Court of Appeals affirmed this Court's Order that the Alien Tort Statute, the Convention on the Law of the Sea, the ICCPR, and the bilateral treaty concerning the use of an Air Force base at Manta, Ecuador do not confer subject matter jurisdiction in this case. With regard to the PVA and SAA, the Court of Appeals stated:

> [The PVA and SAA provide] an explicit waiver of sovereign immunity. The PVA waives sovereign immunity for suits for "damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). But the PVA contains a reciprocity requirement: A national of a foreign country may sue under the PVA only if the government of that foreign country would permit a United States national to bring the same suit in its courts. *Id.* § 31111. The SAA waives sovereign immunity, subject to some exceptions, in admiralty cases when a civil action could otherwise be brought if the United States were not a party. *Id.* § 30903(a); *see Earles v. United States*,

935 F.2d 1028, 1032 (9th Cir. 1991) (recognizing a "discretionary function exception" to that waiver).
...

The [Supreme] Court concluded that a plaintiff who brings an admiralty claim that falls within the scope of the PVA must meet the PVA's reciprocity requirement, even though the text of the SAA suggests that a claim brought under the SAA need not meet that requirement. *[United States v. United Continental Tuna Corp.*, 425 U.S. 164, 181 (1976)].
...

The PVA's waiver of sovereign immunity is conditioned on the following reciprocity requirement: A national of a foreign country may not maintain a civil action under this chapter unless it appears to the satisfaction of the court in which the action is brought that the government of that country, in similar circumstances, allows nationals of the United States to sue in its courts. 46 U.S.C. § 31111. The district court held that the documents submitted by Plaintiffs—an affidavit by an Ecuadorian lawyer and a translated copy of the Ecuadorian constitution—were insufficient to establish that reciprocity exists. We agree.

The documents say nothing about sovereign immunity or about suits for damages caused by the Ecuadorian government. Non-Ecuadorians may have equal access to Ecuadorian courts and a guarantee of due process, but those issues do not speak to whether Ecuador would allow a United States citizen to sue the Ecuadorian government "in similar circumstances." *Id*. The documents are simply inapposite. Indeed, the affidavit from the Ecuadorian lawyer does not state that any party can sue the Ecuadorian government. The documents demonstrate that a foreign citizen can bring suit to the same extent as an Ecuadorian citizen, but the documents do not address the key issue here: whether the Ecuadorian government would waive sovereign immunity in similar circumstances.

The failure of Plaintiffs' documents to demonstrate reciprocity does not necessarily end the inquiry. Under Federal Rule of Civil Procedure 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." *See Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1216 (9th Cir. 2002)... In *Universe Sales*, 182 F.3d at 1038, we elaborated that, "pursuant to Rule 44.1, courts may ascertain foreign law through numerous means," including through the court's "own research."

Here, the district court held that, because Plaintiffs' documents did not establish reciprocity, Plaintiffs failed to meet their burden of demonstrating reciprocity. We are uncertain whether a plaintiff bears the burden of establishing the content of foreign law for purposes of the PVA's reciprocity requirement. Compare Fed. R. Civ. P. 44.1 (instructing that the district court's determination of foreign law is treated as a ruling on a question of law) and *Nicholas E. Vernicos Shipping Co. v. United States*, 349 F.2d 465, 467 (2d Cir. 1965) (conducting an extensive inquiry into the content of Greek law for purposes of determining reciprocity under 46 U.S.C. § 31111), with

> *Lauro v. United States*, 162 F.2d 32, 34-35 (2d Cir. 1947) (rejecting, before the promulgation of Rule 44.1, a claim under the PVA brought by an Italian plaintiff because "[s]he offered no proof of Italian law in the District Court"). But even assuming that Plaintiffs bear the burden here, the district court apparently did not recognize that, in its discretion, it could inquire further into the content of Ecuadorian law. We therefore vacate and remand. *Cf. United States v. Davis*, 428 F.3d 802, 803 (9th Cir. 2005) ("Because the district court did not believe it had [certain] discretion, we vacate and remand for reconsideration . . . .").
>
> Whether reciprocity exists under Ecuadorian law remains undetermined. Notably, the attorney for the United States asserted at oral argument that he did not know whether such reciprocity exists. In these circumstances, we find it appropriate to give the parties and the court an additional opportunity to determine this threshold question. On remand, the court may instruct the parties to provide additional evidence, through testimony or other means; the court may conduct its own research; and the court may undertake any other inquiry consistent with Rule 44.1 to determine whether reciprocity exists under Ecuadorian law.

(ECF No. 70 at 9, 14-16).

On July 6, 2012, this Court ordered that discovery and supplemental briefing regarding whether reciprocity exists under Ecuadorian law. The parties engaged in discovery.

On November 15, 2011, Plaintiffs submitted supplemental briefing. On November 21, 2011, the United States submitted supplemental briefing. On November 22, 2011, Plaintiffs filed an objection to the supplemental briefing filed by the United States.

On January 5, 2012, this Court ordered the parties to file English-language translations of every Constitution or Constitutional provision, law, statute, or legal authority upon which the parties rely. On February 1, 2012, the United States submitted supplemental documents. On February 3, 2012, Plaintiffs filed supplemental documents.

On March 13, 2012, the Court issued an order requiring further briefing by the parties. The Court stated that the United States had asserted in part:

> [R]egardless of the outcome of any inquiry into reciprocity, by the parties or by this Court, such an outcome has no effect on whether subject matter jurisdiction exists. This Court's ruling that there is no waiver of sovereign immunity, and therefore no subject matter jurisdiction, based on the discretionary function exception to any partial waiver of sovereign immunity in the PVA and/or SAA was affirmed and not disturbed by the panel. The outcome of the reciprocity issue has become moot. This Court need not proceed with the issue of whether reciprocity exists. Subject mater jurisdiction is absent in either case.

(ECF No. 95 at 4) (citing ECF No. 90 at 5). The Court stated: "In light of the dispositive nature of the claim of sovereign immunity, the Court will order the parties to fully brief the

1  issue of whether the discretionary function exception applies to the Public Vessels Act and
2  would require dismissal of this action independent of any ruling as to reciprocity." *Id*. at 5.
3  This Court ordered the parties to file memorandums addressing the issue of whether the
4  discretionary function exception applies to the PVA and whether the discretionary function
5  exception would require dismissal of this action independent of any ruling as to reciprocity.
6        On March 26, 2012, the United States submitted a supplemental memorandum. On May
7  2, 2012, Plaintiffs submitted a supplemental memorandum.

8  **II.   Discussion**
9        **A.   PVA Discretionary Function Exception**
10       The United States contends that subject matter jurisdiction is lacking on the grounds that
11 the discretionary function exception applies to this case retaining sovereign immunity for the
12 United States. The United States contends that the discretionary function exception to the
13 waiver of sovereign immunity applies equally to the PVA and the SAA. The United States
14 contends that the Court's prior findings regarding the applicability of the discretionary function
15 exception to the SSA should also apply to the PVA claim retaining sovereign immunity for the
16 United States.

17       Plaintiffs contend that "the case was sent back to the District Court for a determination
18 [of whether] the U.S. Coast Guard violated its own regulations[; b]ecause, if it did, then the
19 discretionary function [exception does] not apply." (ECF No. 99 at 9). Plaintiffs contend that
20 the court erred in denying discovery to Plaintiffs on the grounds that jurisdictional issues and
21 substantive issues are "so intertwined that the question of jurisdiction is dependent on
22 resolution of the factual issues going to the merits ...." *Id*. at 11. Plaintiffs contend that
23 discovery is necessary to determine "the agreement between the agents of the United States
24 and the Ecuadorian government, and what effect that violation of the Coast Guard's regulations
25 and agreements with the Ecuadorian government had on Defendant's discretionary function
26 defense ...." *Id*. at 14.

27       The United States, as a sovereign, is immune from suit. *United States v. Mitchell,* 445
28 U.S. 535, 538 (1980). A federal district court only has subject matter jurisdiction over a suit
against the United States when sovereign immunity has been waived. *Argentine Republic v.*

*Amerada Hess Shipping Corp.,* 488 U.S. 428, 435 (1989). "It is axiomatic that Congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States." *Roberts v. United States,* 498 F.2d 520, 525 (9th Cir. 1974). A waiver of sovereign immunity as contained in any statute "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 192 (1996).

The PVA incorporates the consistent provisions of the SAA by stating: "A civil action under this chapter is subject to the provisions of chapter 309 of this title [the SAA] except to the extent inconsistent with this chapter." *See* 46 U.S.C. § 31103. "Although neither [the PVA nor the SAA] contain[] an express discretionary function exception, it has been implied into both [the PVA and the SAA]." *Thames Shipyard and Repair v. United States*, 350 F.3d 247, 254 (1st Cir. 2003); *see also Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006) (holding that the discretionary function exception applies to both the PVA and SAA); *Baldassaro v. United States*, 64 F.3d 206, 208 (5th Cir. 1995) (holding that the discretionary function exception applies to the SAA); *B & F Trawlers, Inc. v. United States*, 841 F.2d 626, 630 (5th Cir. 1988) ("We and other circuit courts have for some years incorporated this [discretionary function] exception into the [SAA] and PVA.") (citations omitted); *U.S. Fire Ins. Co. v. United States*, 806 F.2d 1529, 1535 (11th Cir. 1986) (holding that the discretionary function exception applies to the PVA) (abrogated on other grounds by *U.S. v. Gaubert*, 499 U.S. 315, 326 (1991)).

In this case, the Magistrate Judge concluded that jurisdictional discovery is not necessary. *See* (ECF Nos. 24, 56). This Court held that Plaintiffs failed to establish subject matter jurisdiction under the SAA because the discretionary function exception applies retaining sovereign immunity for the United States. *See* (ECF Nos. 27, 57). The Court of Appeals for the Ninth Circuit affirmed the Court's holding. The Court finds that the discretinary function exception applies to the PVA claim as well. The Court concludes that Plaintiffs failed to establish subject matter jurisdiction under the PVA because the discretionary function exception applies retaining sovereign immunity for the United States.

**B.     Reciprocity**

Plaintiffs contend that Ecuador has an "open courts" provision in its Constitution which

- 8 -                                                                                                07cv817 WQH (WMc)

"guarantees foreigner's the same rights as Ecuadorians" in court and "allows the state to be held liable for arbitrary arrest and detention and miscarriage of justice." (ECF No. 89 at 3) (citing Constitution of Ecuador, 1998, arts. 11, 13, and 17). Plaintiffs contend that the Ecuadorian Constitution also provides that "Ecuador in its relation with the international community, it is declared that international law is the standard of conduct and reciprocity promotes the settlement of disputes by methods legal and peaceful." *Id*. (citing Constitution of Ecuador, 1998, art. 4). Plaintiffs contend that "sovereign immunity does not exist under Ecuadorian law ...." *Id*. at 5.

Plaintiffs have submitted the declaration of Nestor Arbito, former Ecuadorian Minister of Justice and Human Rights, who states: "The concept of any immunity for the government for wrongs committed by its agents simply does not exist in Ecuador." (ECF No. 8-1 at 2). Plaintiffs have submitted the declaration of Karina Peralta Velasquez, a former Deputy Minister of the Ministry of Justice and Human Rights in Ecuador, who states that "the term 'sovereign immunity' has a different meaning" in the Ecuadorian legal system. *Id.* at 6. Velasquez states that Ecuador has "statutory law, and no restriction, which may impede any individual (national or foreigner) to sue the government." *Id*. Plaintiffs have submitted the declaration of Dr. Hector Villagran Lara, attorney, professor, and "expert on Ecuadorian Constitutional and International law," who states: "The legal concept of sovereign immunity for civil cases ... does not exist under Ecuadorian law ...." *Id.* at 10.

The United States contends that "the issue is not simply whether non-Ecuadorians can file a suit in that country's court ..., but whether a suit in 'similar circumstances' to the one here can be filed, *i.e.,* suit by a United States citizen against a military branch of the Ecuadorian government for damages by a public/military vessel." (ECF No. 90 at 9-10). The United States contends that the affidavits submitted by Plaintiffs "state nothing about suits against the Ecuadorian military ...." *Id*. at 10. The United States contends that "case law in this country shows that Ecuador has officially waived sovereign immunity in a number of cases ... [w]hen sovereign immunity is waived by a country, the inescapable conclusion is that there existed sovereign immunity to waive." *Id.* at 18 n.4 (citing *Jota v. Texaco*, 157 F.3d 153, 163 (2d Cir. 1998); *Aquamar, SA v. Del Monte*, 179 F.3d 1279, 1300 (11th Cir. 1999).

The United States has submitted the expert report of Dr. Ricardo Vaca Andrade who states: "[T]here is nothing in the Constitution of Ecuador ... which would absolutely guarantee reciprocity" in this case. (ECF No. 90-3 at 5). The United States has submitted a copy of an English translation of the 1998 Constitution of Ecuador which states: "The people of Ecuador ... proclaim their will to consolidate the unity of the Ecuadorean nation ... invoke the protection of God and in the exercise of its sovereignty, establish in this Constitution ...." (ECF No. 93 at 3). The 1998 Constitution of Ecuador states: "Ecuador is a social State ruled by law; it is sovereign, unitary, independent, democratic, multicultural and multi-ethnic. .... Sovereignty lies with the people, whose will is the basis of authority, exercised through public bodies using democratic means as provided for by this constitution." *Id*. Article 4 of the 1998 Constitution of Ecuador states: "Ecuador, in its relationship with the international community: ... Declares international law as the norm of conduct between nations in their reciprocal relations and promotes resolving controversies by legal and peaceful means." *Id*. at 4. Article 13 of the 1998 Constitution of Ecuador states: "Foreign persons shall enjoy the same rights as Ecuadoreans, with the limitations established by the Constitution and the law." *Id*. at 5. Article 17 of the 1998 Constitution of Ecuador states: "The State shall guarantee all of its inhabitants, without any discrimination whatsoever, the free and effective exercise and enjoyment of the human rights set forth in this Constitution and in the declarations, pacts, agreements and other current international instruments." *Id*. Article 23 of the 1998 Constitution of Ecuador states: "Without prejudice to the rights set forth in this Constitution and in the current international instruments, the State shall recognize and guarantee persons the following: ... Equality under the law." *Id*.

Ecuador is a sovereign nation. *See* Constitution of Ecuador, 1998; *Jota,* 157 F.3d at 163 (remanding case to district court stating that "Ecuador's previously asserted position on waiver of sovereign immunity [less than complete waiver] justified the earlier denial of intervention, [however upon remand] Ecuador will have the opportunity to revise its position [to make a complete waiver of sovereign immunity] if it is so inclined"); *Aquamar, SA*, 179 F.3d at 1300 (holding that an ambassador's "waiver of Ecuador's sovereign immunity was complete and effective ...."). The evidence may demonstrate that non-Ecuadorians have equal access to

1 Ecuadorian courts and a guarantee of due process, but the evidence does not show that Ecuador would allow a United States citizen to sue the Ecuadorian government in circumstances similar to this case.  The evidence does not demonstrate that Ecuador waives its sovereign immunity in admiralty actions brought in Ecuador's courts by foreigners for damages caused by a public vessel of Ecuador.  The Court concludes that the PVA is not a valid basis for subject matter jurisdiction because reciprocity does not exist with Ecuador.

### III.   Conclusion

IT IS HEREBY ORDERED that Plaintiffs failed to establish subject matter jurisdiction under the Public Vessels Act because the discretionary function exception applies retaining sovereign immunity for the United States.  The Public Vessels Act is not a valid basis for subject matter jurisdiction because reciprocity does not exist with Ecuador which is a jurisdictional prerequisite to the waiver of sovereign immunity under the Public Vessels Act.

DATED:  June 13, 2012

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge