# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSWALDO ENRIQUE TOBAR, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civil No. 07cv00817-WQH-JLB <br><br> ORDER |

HAYES, Judge:

The matter before the Court is the Motion for Partial Summary Judgment and Motion for Partial Declaratory Judgment filed by Plaintiffs. (ECF No. 158).

**I. Background**

On January 4, 2007, Plaintiffs commenced this action by filing a Complaint against Defendant United States of America in the Southern District of Texas. (ECF No. 1). On May 2, 2007, this action was transferred to this Court. (ECF No. 1). On August 31, 2007, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (ECF No. 10). On January 15, 2008, the Court dismissed the Complaint for lack of subject matter jurisdiction, finding that the United States has not waived its sovereign immunity. (ECF No. 27).

On February 5, 2008, Plaintiffs filed the First Amended Complaint ("FAC"), which is the operative pleading in this case. (ECF No. 28). The FAC alleges subject

1  matter jurisdiction pursuant to the following sources: (1) the Suits in Admiralty Act
2  ("SAA"), 42 U.S.C. § 741 *et seq.*; (2) the Public Vessels Act ("PVA"), 46 U.S.C. § 781
3  *et seq.* and including 46 U.S.C. § 31111 (providing reciprocity requirement for suits
4  brought by foreign nationals); (3) two treaties between the United States and Ecuador,
5  one pursuant to the United Nations Covenant on the Law of the Sea ("UNCLS") and
6  another entered into in 1999 (the "1999 Treaty"); (4) the Alien Tort Act ("ATA"), 28
7  U.S.C. § 1350; and (5) the International Covenant on Civil and Political Rights
8  ("ICCPR"). The FAC alleges that Plaintiffs are residents of Ecuador. The FAC alleges
9  that on or about October 5, 2005, Defendant's agents "unlawfully and negligently,
10 stopped, searched, arrested, detained and imprisoned the Plaintiffs, seized the boat,
11 destroyed the cargo and fish owned by Plaintiffs Rosa Carmelina Zambrano Lucas, and
12 Oswaldo Enrique Tobar, for allegedly possessing illegal drugs" in international waters
13 off the Galapagos Islands. (ECF No. 28 at 3). The FAC alleges that "agents of the
14 Defendant were careless, reckless and negligent in this case or alternatively their acts
15 were intentional in that they ... [a]rrested and detained the Plaintiffs for no reason for
16 over 99 days ... [f]ailed to ascertain that Plaintiffs were not drug dealers and/or
17 smugglers ... [a]rrested the Plaintiffs without probable cause ... [f]alsely imprisoned the
18 Plaintiffs for no reason despite Plaintiffs' protestations ... [f]ailed to release the
19 Plaintiffs and their vessel when it became known they were not drug smugglers and did
20 not possess any illegal substances ... [v]iolated the Plaintiffs' international legal rights
21 and law of the sea ... [v]iolated international law by boarding and seizing a foreign
22 flagged vessel in international waters ... [c]ommitted various and numerous assaults on
23 Plaintiffs persons during their imprisonment ... [w]rongfully seized and kept the vessel
24 owned by Plaintiffs Rosa Carmelina Zambrano Lucas and Oswaldo Enrique Tobar ...
25 violated right of privacy of all the Plaintiffs ... [d]estroyed the personal property of the
26 Plaintiffs without probable cause ... [h]eld the Plaintiffs as prisoners under armed guard
27 ... [and] [v]iolated specific treaty obligations with Ecuador." *Id.* at 4. The FAC alleges
28 that all Plaintiffs have suffered humiliation, physical and mental pain and suffering,

extreme anxiety and depression. The FAC alleges that Plaintiffs Rosa Carmelina Zambrano Lucas and Oswaldo Enrique Tobar have suffered from destruction of their personal property, property damage to the vessel, loss of their catch of fish in the amount of $500,000, lost use of the vessel, and public ridicule. Plaintiffs assert no claims for relief but request $5,025,000.00 in damages.

On June 5, 2008, Defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 31). On July 15, 2008, Plaintiffs filed a motion for leave to file a second amended complaint, adding the Military Claims Act ("MCA"), 10 U.S.C. section 2734, and a regulation, 49 C.F.R. section 1.46(b), as additional bases for subject matter jurisdiction. (ECF No. 44). On September 19, 2008, the Court issued an order granting the motion to dismiss and denying leave to amend. (ECF No. 57). The Court's September 19, 2008 Order concluded that the United States had not waived its sovereign immunity under any of the sources alleged in the FAC or proposed second amended complaint.

On September 22, 2008, judgment was entered. (ECF No. 58). On October 22, 2008, Plaintiffs filed a notice of appeal. (ECF No. 59). On June 14, 2011, the United States Court of Appeals for the Ninth Circuit issued an opinion, affirming in part and vacating in part the September 19, 2008 Order. *Tobar v. United States*, 639 F.3d 1191 (9th Cir. 2011); (ECF No. 70).

**A.  *Tobar I***

The U.S. Court of Appeals for the Ninth Circuit affirmed this Court's finding that there is no waiver of sovereign immunity as to all non-Congressional sources, the MCA, the ATA, and the treaties cited by Plaintiffs. *Tobar*, 639 F.3d at 1195-96. As to the PVA, SAA, and Federal Tort Claims Act ("FTCA"), the Ninth Circuit found that the case fell within the scope of the PVA. *Id.* at 1199. Accordingly, the Ninth Circuit held that the PVA's reciprocity requirement, 46 U.S.C. section 31111, must be met in order for Plaintiffs to maintain suit under PVA, SAA, or FTCA as foreign nationals. *Id.* at 1196, 1199. The Ninth Circuit stated that "[w]e are uncertain whether a plaintiff

1 bears the burden of establishing the content of foreign law for purposes of the PVA's
2 reciprocity requirement." *Id.* at 1200. The Ninth Circuit concluded that "the district
3 court apparently did not recognize that, in its discretion, it could inquire further into the
4 content of Ecuadorian law." *Id.* "We therefore vacate and remand." *Id.* "[W]e find
5 it appropriate to give the parties and the court an additional opportunity to determine
6 this threshold question." *Id.*

### B. The June 13, 2012 Order (ECF No. 100)

On July 6, 2011, the Court ordered that "[t]he parties shall file supplemental briefing regarding whether reciprocity exists under Ecuadorian law within seventy-five days of the date of this order." (ECF No. 73). On January 5, 2012, the Court ordered that "[t]he parties are ordered to file English-language translations of every Constitution or Constitutional provision, law, statute, or legal authority upon which they rely no later than thirty days from the date of this Order." (ECF No. 92). On March 13, 2012, the Court ordered that "the parties shall file Memorandums addressing the issue of whether the discretionary function exception applies to the Public Vessels Act and would require dismissal of this action independent of any ruling as to reciprocity no later than March 26, 2012." (ECF No. 95). Following supplemental briefing on these issues, the Court issued an order on June 13, 2012. (ECF No. 100).

In the June 13, 2012 Order, the Court concluded that the discretionary function exception applied in this case under both the PVA and the SAA. The Court also concluded that reciprocity does not exist with Ecuador.

On July 12, 2012, Plaintiffs filed a notice of appeal of the June 13, 2012 Order. (ECF No. 101). On November 20, 2013, the Ninth Circuit issued an opinion affirming in part and vacating in part the June 13, 2012 order. *Tobar v. United States*, 731 F.3d 938 (9th Cir. 2013); (ECF No. 107).

### C. *Tobar II*

In *Tobar II*, the Ninth Circuit considered "whether the government has waived its sovereign immunity," specifically, "whether reciprocity with Ecuador exists and, if

so, whether the discretionary function exception bars Plaintiffs' claims." *Tobar*, 731 F.3d at 941. With respect to reciprocity, the Ninth Circuit "disagree[d] with the district court's analysis of the experts' affidavits." *Id.* Specifically, the Ninth Circuit found that Plaintiffs' expert affidavits established that sovereign immunity does not exist in Ecuador because it is a civil law nation and there would be "no legal impediment to a United States citizen's suing the Ecuadorian government in similar circumstances...." *Id.* at 942. Therefore, "reciprocity exists." *Id.*

With respect to the discretionary function exception, the Ninth Circuit began its analysis by holding that the discretionary function applies to suits under the PVA and SAA. The Ninth Circuit then considered whether the discretionary function exception applies in this case. With respect to the first step of the analysis, "whether the challenged actions involve an 'element of judgment or choice,'" *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (citation omitted), the Ninth Circuit found, based on the pleadings, that Plaintiffs had established that Defendant's actions did not involve an element of judgment or choice. *Tobar*, 731 F.3d at 946-47. Specifically, the Ninth Circuit found:

> Plaintiffs do not assert that § 89(a) prescribes a specific course of action. Instead, they assert that the government violated its own regulations and policies. In particular, the U.S. Coast Guard Maritime Law Enforcement Manual provides: "When acting pursuant to flag State authorization, the boarding State may not exceed the terms of the authorization. Such authorization may be contained in a pre-existing written agreement or may be provided on an ad hoc basis." That policy does not afford any discretion: "the boarding State may not exceed the terms of the authorization." (Emphasis added.) Here, the specific authorization to board and inspect Plaintiffs' boat contained the following condition: "If there are no drugs on board, and there are damages or losses sustained by the vessel, in accordance to the U.S. laws and in a manner complying with international laws, the owner of the vessel will be compensated, as long as neither the vessel nor the crew have been involved in illicit actions." That directive, too, is specific and mandatory: The owner "will be compensated," so long as the specified conditions are met. (Emphasis added.) By carrying out its activities with respect to Plaintiffs' boat, the government accepted that mandatory obligation.
>
> Accordingly, to the extent that Plaintiffs demonstrate that all of the specified conditions have been met, their claims are not barred by the discretionary function exception.

*Id.* at 946. The Ninth Circuit provided further discussion of the "specified conditions"

that Plaintiffs would be required to "demonstrate" in order to show that the discretionary function exception did not exist:

> It is less clear that Plaintiffs have exhausted their administrative remedies, as required by the policy: "in accordance to the U.S. laws and in a manner complying with international laws, the owner of the vessel will be compensated." The complaint alleges that Plaintiffs "filed a claim for injuries with the United States Navy and Coast Guard" and that the government took no action on that claim within six months, "tantamount to denial of the claim." At oral argument, the government's lawyer suggested that the administrative denial of Plaintiffs' claim resulted from Plaintiffs' failure to provide documentation of damages. In order to prove that the government violated its nondiscretionary duty to pay damages to the owner, Plaintiffs must demonstrate that it met the administrative requirements imposed by federal law. But these issues cannot be decided on the pleadings.
>
> Two additional, related restrictions warrant mention. First, the non-discretionary duty requires the government to pay damages to "the owner" of the boat. (Emphasis added.) Because the government's non-discretionary duty applies only to the owner of the boat, the only Plaintiffs who can benefit from the policy are the owners. Second, the nondiscretionary duty pertains to "damages or losses sustained by the vessel." Plaintiffs have alleged a wide range of injuries, including physical damages to the boat itself and reputational damages to crew members resulting from "public ridicule." Because the parties have not briefed the issue, we express no view on the extent of "damages or losses" encompassed by the non-discretionary duty to pay.

*Id.* at 947.

With respect to the second step of the analysis, "'whether that judgment is of the kind that the discretionary function exception was designed to shield,' namely, 'only governmental actions and decisions based on considerations of public policy,'" *Terbush*, 516 F.3d at 1129 (citation omitted), the Ninth Circuit found that "[t]he challenged actions—the boarding, searching, and towing of the ship—all fall under policy considerations of domestic drug enforcement laws, 'minimization of intrusion on the privacy and property interests of searched parties,' general considerations of foreign relations, as well as 'weighing the costs of [boarding and searching the ship] against the likelihood of an enforcement success.'" *Tobar*, 731 F.3d at 948 (citation omitted). The Ninth Circuit held: "We therefore hold that, to the extent that Plaintiffs' claims fall outside the non-discretionary duty to pay damages, their claims are barred by the discretionary function exception." *Id.*

**D. The Pending Motion (ECF No. 158)**

On October 24, 2014, Plaintiffs filed the Motion for Partial Summary Judgment and Motion for Declaratory Judgment. (ECF No. 158). On November 17, 2014, Defendant filed an opposition. (ECF No. 169). On November 17, 2014, Defendant filed a second opposition, which addresses Plaintiffs' request within the Motion for Partial Summary Judgment to extend the discovery cut-off. (ECF No. 168). On November 24, 2014, Plaintiffs filed a reply. (ECF No. 173). On December 1, 2014, Defendant filed a response to exhibits submitted by Plaintiffs' in support of their reply brief. (ECF No. 176-77).

## II. Facts

According to a Drug Enforcement Agency Memorandum (the "Memorandum"), the USS McClusky located the Jostin approximately 330 miles east of the Galapagos Islands. In its answer to Defendant's interrogatory number three, Plaintiffs stated that Plaintiffs Tobar and Zambrano Lucas were the owners of the Jostin. (ECF No. 170-4 at 3). The Memorandum states that the U.S. Coast Guard searched the Jostin at sea and then Ecuadorian officials towed the Jostin to the pier in Machala, Ecuador, where the Jostin was further searched.

In a letter dated October 5, 2005 to Ecuadorian Rear Admiral Eduardo Navas Najera, Lawrence K. Ellis, Lieutenant Commander of the U.S. Coast Guard Attache, noted that 500 kilos of cocaine were found aboard the Jose Antonio. (ECF No. 158-2 at 3). The letter sought permission to board the Jostin because it was found near the Jose Antonio. Lawrence Ellis offered "the opportunity of jointly boarding (the vessel) at a dock in Ecuador to determine if there is more contraband on board, which we suspect." *Id.* The letter further states:

> 3. Simultaneously, the USSS McClusky has found another fishing vessel near "JOSE ANTONIO" by the name of "JOSTYN" approximately at 300 nautical miles southeast of the Galapagos. The vessel is seventy feet log, the Registry Number is P-04-0767, there are 22 crew members, and has the Ecuadorian flag. The Captain of the vessel told us that it carries 800 pounds of "El Dorado" and 800 pounds of "Shark." The vessel has four big barrels on the deck and is hauling five small boats with long chains; these two indications that it might be involved in operations with the drug

>dealers. For these reasons, and since this area is not known as a fishing area, and the "JOSTYN" being so close to "JOSE ANTONIO" we suspect that the vessel might probably also be involved in illegal operations.
>
>4. Thus, we would like for the Ecuadorian government to confirm or deny that the vessel "JOSTYN" is Ecuadorian. Please confirm or deny if the vessel is Ecuadorian. If the vessel is Ecuadorian we would request your permission to stop, board, and inspect the vessel for the presence of illegal drugs. If we find illegal drugs, we will ask the Ecuadorian government what it is you want to do with the vessel, the crew and the cargo. If there are no drugs on board, and there are damages or losses sustained by the vessel, in accordance to the U.S. laws and in a manner complying with international laws, the owner of the vessel will be compensated, as long as neither the vessel nor the crew have been involved in illicit actions.

*Id.*

In its responses to Plaintiffs' requests for admissions, Defendant admitted in part and denied in part that "no drugs or other contraband were found on Plaintiffs' fishing vessel(s)." (ECF No. 158-7 at 3). Defendant stated that "it cannot state that illegal drugs or weapons were not aboard the F/V Jostin in the days and/or hours *prior* to the boarding by the Coast Guard boarding team and the United States believes the contrary to be the case. Illegal drugs were, however, contemporaneously discovered aboard the nearby F/V Jose Antonio - approximately $169,000,000 worth of cocaine. The United States understands that, according to Ecuadorian officials, ownership of Jostin and Jose Antonio was held by common interests." *Id.* Torrey Bertheau, who Plaintiffs contend "was in charge of the boarding and searching the Plaintiffs vessel," testified that "I understand that there was no contraband found on the vessel." (ECF No. 158-1 at 7, ECF No. 158-7 at 6).

The Memorandum describes the interdiction, search, and interviews aboard the Jostin. The Memorandum notes that the Jostin was located 330 miles east of the Galapagos Islands. The Memorandum notes that at the time of the interdiction, "the Jostin was not actively fishing and were towing five pangas." (ECF No. 170-2 at 3). A Coast Guard Command Center Case Log notes that the five pangas, "each with long-range whip antennas ... is consistent with vessels that act as security (or lookout) vessels for drug smuggling ventures)." (ECF No. 170-3 at 3). The Memorandum notes that twenty-one crew members were aboard the Jostin, even though Ecuadorian maritime

existing country documentation indicated that only seven Ecuadorian nationals were aboard the Jostin.

The Memorandum also notes that the U.S. Coast Guard interviewed Joffre Jonny Cedeno, who identified himself as the captain, while the U.S. Coast Guard was aboard the Jostin. The Memorandum notes several inconsistencies in Cedeno's answers to questions by the U.S. Coast Guard. According to the Memorandum, Cedeno stated that he had been captain of the Jostin for "approximately one year." (ECF No. 170-2 at 3). According to the Memorandum, Cedeno stated that he could not remember how many fuel tanks were aboard the Jostin and then stated that there were four fuel tanks, but an inspection revealed that there were six fuel tanks aboard the Jostin. According to the Memorandum, Cedeno stated, when asked about the purpose of his voyage, that the purpose of the voyage was fishing, that the crew had caught approximately one thousand fish, that they had cut the fishes' heads with a machete, and that they had delivered them to below-deck coolers. According to the Memorandum, upon inspection, about half of that amount of fish were found, and their heads were intact. According to the Memorandum, the machete described by Cedeno was "dulled and rusted." (ECF No. 170-2 at 4). The Memorandum further notes that Cedeno's cellular telephone was searched, with two incoming text messages stating, "Please tell him that they do not have anything to worry about" and "Good, you worked fast." *Id.* at 5.

According to the Memorandum, when the Jostin was later searched in Ecuador, "the search team found approximately 25 empty 10-gallon plastic gas cans inside the forward P-tank compartment of the vessel." *Id.* at 4. The Memorandum further notes that "there were four 55-gallon plastic drums filled with gasoline on the rear deck just in front of the fish cooler." *Id.*

**III. Discussion**

The pending motion contains three separate motions: (1) a motion for summary judgment; (2) a motion for partial declaratory judgment; and (3) a request to defer discovery pending resolution of Plaintiff's motion for summary and declaratory

judgment.

## A. Partial Summary Judgment

Plaintiffs request an order that Defendant is liable as a matter of law for personal injuries suffered by Plaintiffs. Plaintiffs contend that the Ninth Circuit specifically found that no drugs were found on the Jostin, and, therefore, the issue of Defendant's liability has already been decided. Plaintiffs contend that Defendant has already admitted that no drugs were found on the Jostin.

Defendant contends that the Ninth Circuit's opinion in *Tobar II* set several conditions that the Plaintiffs must prove in order to prevail: (1) that the Plaintiffs were owners of the Jostin; (2) that the alleged damages or losses were sustained by the vessel; (3) that neither the owners or the crew were engaged in "illicit actions"; (4) that they have complied with international law; (5) that they have complied with United States law; (6) that they have satisfied the administrative requirements imposed by federal law. (ECF No. 169 at 17). Defendant contends that Plaintiff has not met its initial summary judgment burden on any of these conditions.

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden

on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim.") (quotation omitted). "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citing *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992)).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 256.

The Court concludes that summary judgment is improper for the following reasons.

First, *Tobar II* did not determine Defendant's liability. In addition, *Tobar II*'s

holding as to the discretionary function exception was decided on the pleadings alone. A moving plaintiff's initial summary judgment burden requires him or her to "come forward with *evidence* which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480 (citing *Houghton,* 965 F.2d at 1536) (emphasis added). The Court concludes that Plaintiffs are not entitled to summary judgment based on *Tobar II*.

Second, Plaintiffs must "demonstrate that all of the specified conditions" have been met in order to establish that the discretionary function exception of the PVA does not apply in this case. *Tobar*, 731 F.3d at 946. One of the conditions laid out in the specific authorization to board the Jostin is that "neither the vessel nor the crew have been involved in illicit actions." *Id.* (citing ECF No. 158-2 at 3). The Court finds that Plaintiffs have failed to meet their initial summary judgment burden of pointing to evidence in the record demonstrating the absence of a dispute of material fact as to whether the Jostin or its crew were engaged in "illicit actions." The fact that drugs were not found aboard the Jostin does not, by itself, establish that Plaintiff's were not engaged in illicit actions. The Court further finds that a triable issue of fact does exist as to whether the Jostin or Plaintiffs were engaged in "illicit actions." Defendant has submitted evidence in order to demonstrate that the Jostin and its crew were engaged in "illicit actions" (drug trafficking), and not fishing. For example, Defendant has submitted evidence that the Jostin was not actively fishing when it was seized, that the Jostin's captain did not know how many fuel tanks were on board, and that the Jostin contained twenty-five empty gas tanks. The Court concludes that triable issues of fact exist as to whether the Jostin or Plaintiffs were engaged in illicit activities.

Finally, in *Tobar II*, the Ninth Circuit held that, "to the extent that Plaintiffs demonstrate all of the specified conditions have been met, their claims are not barred by the discretionary function exception." *Tobar*, 731 F.3d at 946. In addition to the condition that neither Plaintiffs or the Jostin were involved in "illicit actions," the Ninth Circuit articulated several other conditions that must be met to support a finding that the

United States has waived its sovereign immunity. Those conditions include: (1) Plaintiffs demonstrating "damages or losses sustained by the vessel"; (2) Plaintiffs seeking compensation "in accordance to the U.S. laws," which means that Plaintiffs must "have exhausted their administrative remedies"; (3) Plaintiffs seeking compensation "in a manner complying with international laws"; and (4) Plaintiffs demonstrating "damages to '*the owner*' of the boat." *Id.* at 946-47 (emphasis in original). Plaintiffs do not address these issues in their motion. The Court concludes that Plaintiffs have failed to demonstrate that they would be entitled to a directed verdict on these threshold jurisdictional issues at trial.

Plaintiff's motion for partial summary judgment is denied.

**B. Partial Declaratory Judgment**

Plaintiffs seek declaratory judgment stating that they may recover non-economic damages, in order to "save the parties tremendous expense in time and money since there are potentially 40 more witnesses all over the world to be deposed on this issue." (ECF No. 158-1 at 9). Plaintiffs also contend that they may recover non-economic damages in addition to economic damages.

Defendant contend that Plaintiffs' motion for partial declaratory judgment should be treated as a Rule 56 motion for summary judgment because declaratory judgment was not requested in the pleadings. Defendant contends that the phrase "losses sustained by a vessel" limits recoverable damages to the owners of the Jostin and to physical damage to the Jostin. (ECF No. 169 at 19). Defendant contends that Plaintiffs Tobar and Zambrano Lucas cannot recover for loss of use or profits in the absence of physical damage to the Jostin. Defendant contends that Plaintiffs Tobar and Zambrano Lucas's alleged personal injuries all occurred on land, after the Ecuadorian officials took control of the Jostin, and are therefore barred by the FTCA's foreign country exception, 28 U.S.C. section 2680. Plaintiffs do not address these contentions in reply.

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  "[T]he district court must first inquire whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). "[I]f the court finds that an actual case or controversy exists, the court must decide whether to exercise its jurisdiction by analyzing the factors set out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942), and its progeny." *Id.*  "The *Brillhart* factors are non-exclusive and state that, '1) the district court should avoid needless determination of state law issues; 2) it should discourage litigants from filing declaratory actions as a means of forum shopping; and 3) it should avoid duplicative litigation.'" *Robinson*, 394 F.3d at 672 (quoting *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)) (alterations removed).  Other considerations include:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5. "[I]f a claim for declaratory relief presents merely factual questions that will not terminate the dispute between the parties, it may be appropriate to decline the action." *Celador Intern. Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846 (C.D. Cal. 2004).

The Court finds that declaratory judgment is inappropriate, at this stage in the proceedings, on any issue in this case.  As discussed above, Plaintiffs have yet to establish that the Court has subject matter jurisdiction over this case.  In addition, Plaintiffs did not request declaratory judgment in their pleadings. Plaintiffs' motion for partial declaratory judgment is denied.

**C. Deferring Discovery**

Plaintiffs' motion also requests an order deferring discovery until the Court rules on Plaintiffs' motions for partial summary judgment and partial declaratory judgment.

Plaintiffs assert that deferring discovery will save the parties' time and money because there are potentially forty witnesses to be deposed. Plaintiffs assert that the order on a motion for summary judgment or declaratory relief may preclude many of these depositions or limit their scope.

Defendant contends that Plaintiffs' request is too late, as the discovery cut-off is three days after Plaintiffs' reply brief is due. Defendant assert that Plaintiffs have failed to explain why they did not complete this discovery in the year since the Court's December 19, 2013 Scheduling Order, or why they did not bring the motion sufficiently in advance of the discovery cut-off.

In reply, Plaintiffs assert that more time is needed to investigate Defendant's new defense, "that the Government of Ecuador is primarily responsible for the damages of Plaintiff." (ECF No. 173 at 4).

In this case, the discovery cut-off was December 1, 2014. (ECF No. 116 at 3). Because the discovery cut-off has passed, Plaintiffs request to defer discovery is denied as moot. Any requests to re-open discovery in this case shall be filed before the magistrate judge assigned to this case no later than **twenty (20) days** from the date this order is filed. *See* S.D. Cal. Local Civ. R. 72.1(b).

///

**IV. Conclusion**

IT IS HEREBY ORDERED that Plaintiffs' Motion for Partial Summary Judgment and Motion for Partial Declaratory Judgment and request to defer discovery (ECF No. 158) is DENIED. Any requests to re-open discovery shall be filed no later than **twenty (20) days** from the date this order is filed.

IT IS FURTHER ORDERED that a final pretrial conference is set for Friday, May 22, 2015 at 1:30 P.M. in Courtroom 14B. A non-jury trial is set for Tuesday, September 29, 2015 at 9:00 A.M. in Courtroom 14B.

DATED: January 16, 2015

*William Q. Hayes* (signature)
**WILLIAM Q. HAYES**
United States District Judge