WALTER L. BOYAKI
Attorney at Law
4621 Pershing Dr.
El Paso, Texas 79903
Tel.:  (915) 566-8688
Fax :  (915) 566-5906
E-mail: wboyaki@aol.com
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

OSWALDO ENRIQUE TOBAR,
ET AL,

              Plaintiffs,

v.

UNITED STATES OF AMERICA,

              Defendant.

)(
)(
)(
)(   **No. 07-CV-00817-WQH-(JLB)**
)(
)(   **PLAINTIFFS'**
)(   **SUPPLEMENTAL BRIEF**
)(   **IN SUPPORT OF THEIR**
)(   **EMERGENCY MOTION FOR**
)(   **FURTHER DISCOVERY**
)(
)(

TO THE HONORABLE JUDGE OF SAID COURT:

    Come now Plaintiffs who file this their supplemental brief to the

previously filed Motion for Emergency Hearing or in the Alternative for a

Continuance (Doc. 207 and Doc. 212) and would show the Court as follows:

### **Background**

1.1    This case concerns the wrongfully boarded, searched and seized

Ecuadorian fishing vessel, the <u>Jostyn</u>, which occurred in October 2005.

1.2     Plaintiffs filed a claim without assistance[1] from the Defendant on or about April 18, 2006.

1.3     Plaintiffs filed suit on January 4, 2007.

1.4     Defendant's initial disclosures were filed on April 13, 2007.

1.5     Nowhere in the Defendant's initial disclosures are there references to Plaintiffs' previously filed Exhibit E (Doc. 207), the agreement between Ecuador and the United States.

1.6     Nowhere in the Defendant's initial disclosures is there a reference to an Admiral Justice, a co-signor of the agreement with Ecuador, Exhibit E, Doc. 207.

1.7     Both sides admit that prior to the formal agreement signed on July 9. 2006 between the United States and Ecuador, there was a working agreement between the two countries for the boarding of ships. This is reflected in Admiral Navas' affidavit admitted into evidence as Exhibit 35 and an Embassy letter

---

[1]According to agents of the Defendant, the captain of the Jostyn should have been provided a claim packet. See Doc. 207, Exhibit C.

signed by the same Lt. Commander Ellis[2] dated July 28, 2006, also admitted into evidence as Exhibit 36.

1.18   The commander of the Coast Guard's boarding party, Lt. Bertheau, should have provided the captain of the Plaintiffs' vessel, Cpt. Cedeno, a claim packet and instructions (see Bertheau deposition, pgs 26-30 admitted as Exhibit 5) and (TR. pg 314 of his trial testimony).  This packet  was absolutely in existence for claims for damages caused by the Coast Guard boarding a vessel in 2005.

1.19   The boarding officer, Lt. Bertheau, admitted at deposition that he had a good working knowledge of an agreement between the United States and Ecuador for boarding Ecuadorian vessels on the high seas. (See Bertheau depositions pgs 11,12, 22-25, admitted as Exhibit 5 and TR. pgs 311-315 of his trial testimony).

He further testified that there was a boarding kit that had blank forms which we now can see correlate with the 2006 agreement forms and that the agreement and requirements were the same before and after 2006, and that there were no changes (see TR. pg 314 of his trial testimony) since 2000.

---

[2]Commander Ellis is the same individual who signed the Embassy letter that is the basis for jurisdiction. (Doc. 207, Exhibit A)

-3-

1.20   Commander Ellis at his deposition admitted there was a procedure in place for the United State to search an Ecuadorian vessel (see Ellis deposition p. 149 now admitted as Exhibit 14)[3] and he worked for the U.S. Embassy to obtain permission from the Ecuadorians to board their vessels (see Ellis deposition pgs 27-33 admitted as Exhibit 14).

1.21   Mr. Kieserman testified that there is a Coast Guard form 4100 that was supposed to be used for boarding anywhere in the world.  It was not produced in discovery either.

1.22   Mr. Kieserman referenced that there are other forms which were the basis of the 2006 agreement. Said forms were never produced by the government.

1.23   There are obviously more documents as evidenced by attached Exhibit A showing yet another agreement concerning a similar arrangement which amended an agreement from 1978 between the two countries.

### **Burden of Proof**

The party facing sanctions, not the party seeking sanctions, has the burden of proving its failure to comply with Rule 26, Fed.R.Civ.P. was

-----

[3]The question of a procedure was not asked by Plaintiffs' counsel but rather by the Defendant's counsel.

-4-

substantially justified or harmless. *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001).

The Plaintiffs are responding to the court's order for briefing on this issue. It should be noted that the <u>Plaintiffs</u> filed the motion for sanctions – not the other way around.  Although this process is upside down and the Plaintiffs seemingly are trying to obtain discovery which has heretofore been denied, the Plaintiffs will comply with the Court's order.

However, IT IS NOT POSSIBLE FOR THE PLAINTIFFS TO OBTAIN RECORDS OF AGREEMENTS, TRANSACTIONS AND HAND SHAKE DEALS BETWEEN GOVERNMENTS THAT ARE NOW OVER TEN YEARS OLD. Plaintiffs diligently sent discovery in 2007, filed the initial Motion to Compel in September 2007 (see Doc. 16), made numerous other attempts and filed other motions[4] and still have received nothing – not even the 2006 agreement, or the Manta Agreement, in discovery from the Defendant. This Court effectively prevented discovery for over five years essentially rendering the evidence obscure, stale or out of date.

---

[4] All of the Plaintiffs' motions to obtain discovery starting in September 2007 and ending right before trial have been denied.

Plaintiffs cannot now, or ever, produce a document which existed prior to July 2006 when the "revised" procedure forms were signed. It is not in any way shape or form under their control.

Those documents were and are under the exclusive control of the Defendant. Plaintiffs have no access to any archives or files at the U.S. Embassy in Quito, Ecuador. The Defendant has effectively precluded discovery despite the overwhelming evidence to the contrary. Commander Kieserman's bold faced allegation that Lt. Bertheau is simply "wrong" about his testimony concerning an agreement to board an Ecuadorian vessel is absurd when one considers the political pressure the Ecuadorian government was under after the sinking of eight Ecuadorian fishing vessels (see attached articles as Exhibit B which was admitted to by Mr. Kieserman on the witness stand, Record pgs 38, 39).

### The Tobar II Requirement

The 9th Circuit opinion in *Tobar II* is quite specific in its request to define what was the extent of damages or losses encompassed by the non-discretionary duty to pay. *Tobar II* at 947.

The Court during a hearing on numerous occasions directed, requested, and ordered Plaintiffs' counsel to stick to the issue of some writings to reflect a

revision of the 2006 agreement and its forms.

As counsel tried, on numerous occasions, to show the Court, there was some deal between the governments as evidenced by the affidavit of Admiral Navas (Exhibit 35) and the Embassy letter of Commander (Exhibit 36) and that is was important to ascertain its terms.

This is exactly what *Tobar II* found as a basis of the waiver of sovereign immunity, and we are bound by the wording which clearly states on page 946 of the opinion, "When acting pursuant to flag state authorization, the boarding state may not exceed the terms of the authorization. Such authorization may be contained in a pre-existing written agreement or MAY BE PROVIDED ON AN AD HOC BASIS" (quoting U.S. Coast Guard, Maritime Law Enforcement Manual (MLEM) COMDTINST, M16247.1C (2003).

As such, the best the Plaintiffs have is the written revised agreement. The worst the Plaintiffs have are the ad hoc-working agreements which heretofore has been denied by the Defendant and not produced. Now that both sides have admitted such an agreement, it is incumbent on the Plaintiffs to further pursue what this agreement incorporated. This needs additional discovery and evidence and part of the Plaintiffs' emergency motion. The Court, in light of the affidavit from Admiral Navas and embassy letter from Mr. Ellis, should order the

appropriate remedies as set out below in the remedies section. This will go a long way to answer the concern of the 9th Circuit, will make the next appeal more complete and may potentially avoid another remand. It certainly would avoid a potential question from the panel of the Court of Appeals as to the damages question previously posed in

*Tobar II.*

## **Argument**

From the limited discovery this Court has allowed the Plaintiffs, it is apparent that there was some type of agreement between the United States and Ecuador regarding the boarding of Ecuadorian vessels on the high seas based on the following facts:

1.      Lt. Bertheau's insistence on the existence of an agreement (see section – above);

2.      The Manta Agreement which was expanded to allow boarding of vessels (see Plaintiffs Exhibit 12, not admitted but attached herein as Exhibit B as well as the literature surrounding the agreement);

3.      The 2006 signed agreement (Exhibit 33);

4.      The 2006 agreement with the attachments that were "revised";

5.    The affidavit for Admiral Navas concerning a working agreement (Exhibit 35);

6.    The Embassy letter of Commander Ellis (see above Exhibit 36) reflecting the same working agreement Admiral Navas referred to;

7.    The Claims Packet (S.F.95 and related documents) which not only existed but was given to Ecuadorians who had damage done to their vessels. An example of S.F. 95 was admitted as Exhibit 17.  See also testimony of Lt. Bertheau as set out above and Mr. Kieserman in his deposition on page 89.

Agents of the United States did not altruistically or out of the goodness of their hearts provide claims packets to damaged Ecuadorian vessels.

It is clear and very obvious that all of the requirements to board a Ecuadorian vessels had to be done according to some procedure. This is reflected in the embassy letters back and forth (Exhibit 2) as well as the "Claims Package" and in Lt. Bertheau's testimony.

The parties apparently had some differences of opinion, but there was a basic working agreement as to what was required to board an Ecuadorian vessel in that agreement. Hence the 2006 agreement which was then written to reflect what was agreed upon.

Once again, it is impossible for the Plaintiffs to obtain the necessary information although the Defendant's denial in discovery of the existence of an agreement has been shown to be so unreliable[5] in light of the above facts.

### **Prejudice**

The stone walling to discovery by the Defendant and the dismissals of the Plaintiffs' case prevented discovery for over five years, effectively making discovery at this time nearly impossible since the evidence is now so out dated and stale.

For example, when this Court denied discovery in 2007, all of the witnesses such as Commander Ellis, Lt. Bertheau, Admiral Justice, Admiral Navas were in place, and available with records and documents.

Now over ten years has passed since the date of the initial injustice. The Plaintiffs can now only try to put the pieces together since they have had no access to the Defendant's records and the Court did not assist them in obtaining anything.

---

[5]As an example of the problem the Plaintiffs faced with discovery were the affidavits of Commander Ellis and Mr. Kieserman. They were supposedly written independently yet sections of their affidavits are exactly the same, which was denied by each. (See Exhibit 14, Ellis deposition pgs 63-66 and Exhibit 13, Kieserman deposition pgs 79-87).

## Remedy

The Court needs to know what was the deal between the governments.

The easiest solution is for the Court to recognize, until proven otherwise, that the forms attached to the 2006 agreement were in place in 2005 and revised for whatever reason in 2006.  As such, the agreement reached in 2006 is for all intents and purposes the same working agreement in existence in 2005 and will be the controlling document instead of the Embassy letters admitted as Exhibit 2.

Alternatively, the Court should order a continuance of the trial and allow further discovery including requiring the Defendant to fully answer request for productions and setting and permitting the depositions of the named signatories of the agreement, including Real Admiral Wayne Justice, Admiral Navas, Captain Temy Mantilla (aide to Admiral Navas), Col. Mark Wilkens, supervisor of Commander Ellis, and Attorney General Nestor Arbito (see attached Exhibit C which was used by the Court of Appeals) as well as redeposing Commander Ellis (see attached letter Exhibit 36) and Ambassador Jewell and further order the Defendant to pay Plaintiffs' costs in conducting that discovery and any related discovery. *Treppal v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D. N.Y.

2008).[6]

Another alternative is to follow Mr. Kieserman's testimony (record pgs 86-89) which was to get the parties together and settle the matter as set out in the 2006 agreement since the claim would have been adjudicated <u>after</u> the 2006 agreement.

In addition to assessing costs against the Defendant, the Court should also order the Defendant to pay Plaintiffs' attorney fees and costs caused by the failure to comply with discovery.  F.R.C.P. 37(b)(2), *Lew v. Kona Hosp.*, 754 F.2d 1420, 1427 (9th Cir. 1985). The Plaintiffs essentially would have to take a dozen depositions.

Since this Court has discretion in determining the amount and form of an award, *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986), the Court needs to allow for the costs of travel as well as deposition costs.

The above actions against the Defendant United States are permissible, "When the United States comes into court as a party to a civil suit it is subject to the Federal Rules of Civil Procedure as any other litigant." *Mattingly v. United*

---

[6]After the Kieserman deposition in Nov. 2014 at nearly the close of discovery, Plaintiffs asked for additional time to investigate if any agreement existed between Ecuador and the United States. It was denied.

1   *States*, 939 F.2d 816, 818 (9ᵗʰ Cir. 1991), *United States v. Sumitomo*, 617 F.2d

2

3   1365, 1370 (9ᵗʰ Cir. 1980).

4        Finally, the Plaintiffs, never tiring of trying to obtain further discovery,

5

6   sent another letter (see attached Exhibit D) to Defendants counsel seeking once

7   again, documents. The Defendant's counsel did not bother to respond.

8

9   Plaintiffs' counsel again makes the offer to travel to the American Embassy in

10  Quito, Ecuador and the American Consulate in Guayaquil, Ecuador to review

11

12  whatever there is in the archives of the American Embassy. Counsel will need a

13  court order, a contact at the Embassy and free access to the files.

14                              Respectfully submitted,

15

16                              **BOYAKI LAW FIRM**
                                Attorneys at Law
17                              4621 Pershing Drive
18                              El Paso, Texas  79903
                                Tel.:  (915) 566-8688
19                              Fax :  (915) 566-5906

20

21                      By:     /s/ Walter L. Boyaki
                                **WALTER L. BOYAKI**
22                              State Bar No. 14665300
23                              E-mail: wboyaki@aol.com
                                Attorney for Plaintiffs
24

25

26

27

28

-13-

## CERTIFICATE OF SERVICE

I, **WALTER L. BOYAKI**, do hereby certify that a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to **R. MICHAEL UNDERHILL** and **VICKEY L. QUINN**, on this 8th day of January, 2016.

        /s/ Walter L. Boyaki
        **WALTER L. BOYAKI**